107 So.2d 659

James L. DANIELS

v.

NEW ORLEANS POLICE DEPARTMENT HOUSE OF DETENTION.

No. 43581.

Dec. 15, 1958.

Rehearing Denied Jan. 12, 1959.

Robert J. Zibilich, New Orleans, for appellant.

Alvin J. Liska, City Atty., Beuker F. Amann, Asst. City Atty., New Orleans, for appellee.

HAWTHORNE, Justice.

On August 13, 1956, Provosty A. Dayries, superintendent of the New Orleans Police, dismissed appellant James L. Daniels as warden of the House of Detention. The letter of dismissal reads as follows:

"August 13, 1956

"Warden James L. Daniels
"825 Chartres Street
"New Orleans, Louisiana

"Dear Warden Daniels:

"On the basis of information presently contained in the files of this De-

partment, which was developed jointly by the Police Bureau of Investigation and the Department of Finance, and which information has been reviewed by me, I have concluded that there have been irregularities in the handling of the House of Detention petty cash fund during the period from September 1, 1955 through July 31, 1956. I have concluded further that these irregularities have resulted in the misuse of public funds. The House of Detention petty cash fund was under your direct personal control during the period in question; consequently, it is my finding that you are responsible for this misuse of funds, and that you are, therefore, guilty of gross neglect of the duties of your office.

"Although the investigation of this matter is continuing at the present time, information revealed to date is sufficient to warrant your dismissal.

"Consequently, I hereby dismiss you from the service of this Department, effective immediately.

"You have the right to appeal this decision to the New Orleans Civil Service Commission if you so desire.

"Very truly yours
"/s/ Provosty A. Dayries
"Provosty A. Dayries
"Superintendent of Police
"PAD/1
"cc: Civil Service"

Daniels appealed to the Civil Service Commission of the City of New Orleans, and after a hearing his appeal was dismissed. He has appealed to this court seeking a reversal of the decision of the Commission and an order reinstating him to his former position as warden of the House of Detention with full pay from dismissal until reinstatement. In the alternative he prays that the case be remanded to the Civil Service Commission for a new trial.

For a full understanding of the alleged errors of which Daniels complains in this court, it is necessary that we summarize the facts found by the Commission.

The City Finance Department created a $300 revolving petty cash fund for the House of Detention and placed this sum within the possession and under the direct supervision of Warden Daniels for the purchase of produce at prices lower than those for which it could be bought through the regular city purchasing procedure. From this fund Warden Daniels or one of his designated employees bought vegetables, etc., in the vicinity of the French Market from various produce dealers, principally from Orlando & Scramuzza Fruit & Produce Company, Inc. The petty cash fund was periodically replenished by the city treasury in return for vouchers showing the amounts spent. These vouchers were filled in by Daniels' employees for more than the amount of the sales which the vouchers were supposed to represent, as disclosed by audit sheets offered in evidence and sales tickets of Orlando & Scramuzza Fruit & Produce Company. Evidence was adduced that these vouchers were prepared under Daniels' instructions. The evidence disclosed no explanation of the apparent discrepancies between the sums actually received by the merchant selling the produce and the total sums disbursed from the petty cash fund. This practice was contrary to the fiscal practices of the City of New Orleans and resulted in a financial loss to the city.

In 1956 Superintendent Dayries caused an investigation to be made of the House of Detention petty cash fund, and in a number of cases the amount of money shown on the vouchers as having been paid for the produce was found to exceed the amount of money shown to have been received by Orlando & Scramuzza on its books. On the basis of this investigation and other evidence which it is not necessary for us to set forth, Superintendent Dayries dismissed Daniels by letter quoted above.

In this court appellant contends that the Commission erred as a matter of law when it refused to admit into evidence certain invoices of Orlando & Scramuzza bearing designated numbers. These invoices purported to be of sales made to various customers other than the House of Detention,

such as A & P Tea Company, H. G. Hill Stores, etc. It is appellant's contention that these invoices would have verified the correctness of the figures used by him in the vouchers which he submitted to the city treasury for replenishment of the petty cash fund.

As nearly as we can determine from this record, appellant sought to introduce the above invoices during his examination of the special investigators for the police department, and the chairman of the Commission at that time informed the attorney for the appellant that the proper way to prove the genuineness of these invoices was by the people who had made them out and not by these witnesses. Moreover, these witnesses were unable positively to identify the documents in question. Furthermore, the evidence shows that the prices of produce fluctuate from hour to hour as well as from day to day. As we understand the ruling of the Commission, it held that these documents had not been properly identified, and that they were not relevant. We find no error of law in this ruling.

In the hearing before the Commission Daniels showed that he had been indicted for having committed theft by fraudulently misappropriating money from the petty cash fund, but that he was tried by a jury and acquitted. He argues that this verdict of the jury in the criminal court established a prima facie case for his contention that his dismissal was arbitrary, capricious, and without reasonable or probable cause, and that his proof of this fact caused the burden of proof to shift to the appointing authority to justify the dismissal.

The Louisiana Constitution of 1921 in Article 14, Section 15(N) (1), specifically provides that on appeal to the Civil Service Commission the burden of proof as to the facts is on the employee. Daniels' acquittal in the criminal district court is a fact which of course could be considered by the Commission as any other fact in the case; but we fail to see how proof of this fact caused the burden of proof to shift to the appointing authority, and appellant cites no law or authority in support of this contention.

Appellant next contends that the Commission erred in allowing written statements of the witnesses to go into the record when the witnesses were themselves present, especially in that the Commission's ruling was that the records or statements were allowed in solely for the purpose of showing that the appointing authority had made an investigation, yet the Commission used information contained in the statements and not testified to by the witnesses in drawing up its decision.

What Daniels is complaining of here is that the report of the investigation made to Superintendent Dayries was written after Dayries wrote his letter of dismissal to

Daniels, and that a few days after the letter was written, these investigators interviewed persons who testified before the Commission. Daniels says that "the appointing authority must know why he is dismissing an individual when he writes the letter and must not be allowed to use, in support of his reasons for firing, information which is received by the appointing authority at a date subsequent to the taking of the disciplinary action".

█ Of course the appointing authority must know and set forth in a letter of dismissal the reasons for the dismissal at the time of dismissal. The record shows here that Superintendent Dayries had full knowledge of all the reasons given in his letter of dismissal, and that the reports themselves were written after the dismissal as a result of the investigation which was made before the dismissal and which led to the dismissal. Furthermore, the Commission did not consider these statements in dismissing Daniels' appeal. The witnesses themselves were present and testified before the Commission, and their written statements were admitted only for the purpose of showing that an investigation had been made.

█ Appellant also points out numerous other alleged errors of the Commission which, as we view the matter, involve only questions of fact. For instance, he says the Commission erred when it found that the $300 revolving petty cash fund was established in January, 1954, when in fact the evidence shows it was established in July of that year. He says also that the Commission erred in construing the testimony of one of the witnesses who appeared before it. In other words, his complaints are based on the Commission's finding of fact, which this court has no jurisdiction to review. La.Const. of 1921, Art. 14, Sec. 15(O) (1).

He also claims that the evidence in no way supports the basic finding of fact of the Commission but supports a contrary finding. A determination of this question, however, would also necessitate a review of the facts.

█ Appellant finally contends that there is not one scintilla of evidence showing that he did the things for which he was dismissed in the letter of dismissal. It is true that where there is no evidence at all in the record to justify the conclusions drawn by the Commission, the question of whether the evidence justified the judgment rendered is a question of law. However, as we view the record, there was evidence before the Commission supporting the charges made for appellant's dismissal, and hence there is no question of law for our review.

For the reasons assigned the judgment of the Civil Service Commission of the City of New Orleans dismissing the appeal of appellant Daniels is affirmed.