HERGET, Judge.
The plaintiff, Joseph W. Leggett, a classified employee, prosecutes this appeal from the action of the State Civil Service Commission maintaining the dismissal of appellant from his position as night watchman at Northwestern State College of Louisiana.
The record discloses that he was formally notified of his dismissal in a letter addressed to him by the Dean of Administration of the college on February 22, 1958, in which the charge was made in general terms that due to Leggett’s “activities” his usefulness as a watchman had been destroyed. On appeal to the Commission it concluded that the letter did not state a valid cause for dismissal and was “without effect.” Subsequent to February 22, 1958, on March 28, 1958, there was directed to appellant by the Dean of Administration the following letter:
“Mr. Joseph W. Leggett
“313 North Street
“Natchitoches, Louisiana
“Dear Mr. Leggett:
“It has come to our attention through the appeal to the Civil Service Commission filed by your attorney that you feel Civil Service Regulation 12.3 has not been met because of our failure to give a sufficiently specific reason for your dismissal. We believe that the reason given for your dismissal in our letter of February 22 met the requirement under Paragraph 12.3 of the Civil Service Regulations, but in case the Commission should decide that the reason given was not sufficiently specific, this is notice of your dismissal from the position of Watchman effective on March 29, 1958.
“During the period of your suspension we made careful investigation and evaluation of your involvements at the Horn Street place of business. We cannot afford to continue you in your Campus Security position in view of the fact that your involvements on Horn Street, in one or more of the ways listed below, have brought such discredit to you and to your character that your usefulness to us as a police officer has been destroyed:
“1. In December of 1956 a colored female alleged that a colored male tried to rape her in the back room of your place of business. The colored male told the City Police that he had paid you for the use of the room. This colored female also made a statement in the presence of City Police Officers that you had propositioned her to go to the back room with you. At the time of the investigation, the City Police asked you to remove the bed from the building, and you agreed to remove it.
“2. On December 9, 1956, your supervisor, Mr. James K. Lee, gave you a written warning pertaining to the complaint concerning the alleged operation of a house for the purpose of prostitution.
“3. A report was made to the City Police that you had made a picture of a white girl in the nude. Some of these pictures were distributed in the City. At the time of the report, the City Police again checked your place of business and found that the bed had not been removed. The City Police again advised you to remove the bed.
“4. On December 28, 1957, you were charged in the City Court with the operation of a disorderly house. According to the arresting officers, Mr. *717 George H. Posey and Mr. Kenneth C. Maggio, they found Willie White, colored male, and Ellen Hardy, colored female, in the back room of your place. These two negroes admitted to the two officers and to Mr. Boyd B. Durr, Chief of Police, that each of them had paid you 50{i for the use of the room. Further, on the date of your arrest, December 28, 1957, the officers found that the bed was still in the back room of your place.
“5. Your trial in City Court was delayed on three occasions. First, because of the illness of your brother; second, because of the failure of your attorney to appear in court; and, third, because of the objection raised by your attorney that no City Ordinance was violated because there was none that defined the operation of a disorderly house. Witnesses in the case testified in City Court on February 24. The' testimony of Vernon McClinton and Willie White was to the effect that they had paid you sums of money for the use of your back room. Ellen Plardy testified that she was in such an intoxicated condition that she could not remember the details of the occurrence.
“The above pleadings, separately or as a group, reflect on your morality in such a way that we cannot afford to use your services as a police officer having surveillance over the conduct of young college men and women and visitors to the College’s Campus. You have been fully aware of the fact that, as a police officer for the College, you come in frequent contact with men and women students and that you are called upon to exercise judgment and discretion in dealing with student disciplinary and other problems. The types of complaints as outlined above, together with the reputation you have attained through publicity of these charges, compelled us to conclude that College officials, students, and others affected cannot have reasonable confidence in your performance as a college police officer.
“Yours very truly,
“s/ George T. Walker
“George T. Walker
“Dean of Administration
“rh
“cc: Mr. Lee
“Mr. Fulton
“Dr. Kyser
“Mr. McDougall”
An appeal was taken from this second letter of dismissal. Appellant denied the charges in toto and alleged that he had been acquitted of keeping a disorderly house by the Court of competent jurisdiction, therefore his dismissal was without cause. He prayed that the order discharging him be annulled, and that he be reinstated and his employer ordered to pay back pay from the date of his suspension.
The Commission, following a hearing on the charges made in the letter of March 28, 1958, dismissed Leggett’s appeal from the notice of March 28, 1958. It is from this ruling that an appeal was taken to the Supreme Court of the State of Louisiana and that Court transferred the matter to the Court of Appeal, First Circuit, for decision in accordance with the constitutional amendment, Article 7, Section 30, LSA, vesting jurisdiction of such appeals in the Courts of Appeal.
In substance, the Commission found that appellant, in addition to his duties as a watchman operated a photographic studio; that in the rear room of the studio there was a cot which the Chief of Police of Natchitoches requested be removed and which was removed by appellant; that appellant was charged in the City Court of Natchitoches for operating a disorderly house and was acquitted; that the appellant’s place of business was of a disreputable character and that appellant’s conduct was such that it would be detrimental to continue him in his position as a watchman.
*718 Article 14, Section 15 (N) (1) of the Louisiana Constitution of 1921 establishes the basis of dismissing all permanent employees in Civil Service:
“(N) (1). Employees’ rights and obligations; dismissal, etc., for cause. No person in the State or Classified Service, having acquired permanent Civil Service status, shall be demoted, dismissed, or discriminated against, except for cause, expressed in writing by the appointing authority, (a) The burden of proof on appeal, as to the facts, shall be on the employee.”
The Civil Service Rules, enacted pursuant to the authority vested in the Civil Service Commission by Article 14, Section 15 of the Constitution define the methods to be used by the Commission in hearing appeals from dismissals of employees. Those rules pertinent to this case are as follows:
“13.19 Procedure at Hearing.
******
“(d) The rules of evidence as applied in civil trials before the Courts of the State shall prevail in hearings before the Commission.
“(e) The Commission may require the appellant to give his sworn testimony before hearing any other witness on his behalf. If the commission is satisfied by appellant’s testimony that he has no just or legal ground to support his appeal, it may decline to hear any other evidence and may dismiss the appeal on the facts established by appellant’s testimony.
******
“(m) The facts expressed in writing by the appointing authority as cause for the demotion, suspension, dismissal, or other action against a classified employee with permanent status, shall be accepted as prima- facie true. Parol evidence shall not be received from an appointing authority to explain, supplement, or enlarge the facts as so expressed. The appointing authority may by parol evidence rebut any proof offered by the employee in contradiction of the facts as expressed in writing by the employing authority.”
 Under Article 14, Section 15 (O) (1) of the Constitution of Louisiana the decision of the Civil Service Commission is final on the facts and this Court is limited in its jurisdiction to the resolution or determination of questions of law only. Villemarette v. Department of Public Safety, Division of State Police, La.App., 129 So.2d 835 and Gremillion v. Department of Highways, La.App., 129 So.2d 805. Though we are without judicial authority to review and examine the weight or the sufficiency of the evidence to support the charges on which a civil service employee is dismissed, we are authorized to determine whether the assigned findings of fact constitute adequate cause. Brickman v. New Orleans Aviation Board, 236 La. 143, 107 So.2d 422.
The appellant filed a plea of res judicata to the proceedings on the ground that his acquittal in the court of competent jurisdiction of the charge barred the proceedings in this case. The Commission, and we think properly did so, concluded that the judgment of the criminal court is of no effect on its own determination of the issues arising out of the charges made in a Civil Service proceeding. Louisiana State Board of Medical Examiners v. Booth, La. App., 76 So.2d 15.
The alleged complaint in reference to the use of the cot for immoral purposes grew out of the charge which was tried in the City Court in which appellant was charged with the operation of a house of prostitution and resulted in the acquittal of the appellant. The question of whether the appointing authority may dismiss an employee on the basis of a criminal indictment or charge after he was acquitted on a full trial of the merits is one which we are unable to find direct authority. In City of New Orleans v. *719 Jackson, 224 La. 771, 70 So.2d 679 a police officer was reinstated after acquittal of a criminal charge but the issue involved therein was that of back pay. In the decision of Broussard v. State Industrial School for Colored Youths, 231 La. 24, 90 So.2d 73, the employee was discharged by the authority because she had two husbands, both living, without benefit of divorce from either. The employee was never actually criminally charged with bigamy. The Court upheld her dismissal as a counselor at the State Industrial School for Colored Youths on the finding of fact that she was not a fit person to be employed as a counselor of wayward youth. The employee in the Broussard case failed to prove that she in fact did not have two husbands and acceptance of that status on her part was held by the Court to be inappropriate and not conducive to the discharge of her duties as a counselor. The Broussard case is inappo-site to the decision of the instant case for the reason that herein the appellant vehemently denies the reality of the basis for the complaints made as to his conduct, which complaints form the basis for the cause on which he was dismissed.
In reviewing the Commission’s finding relative to the photographic studio, we can discover no element of an offense or disapproved conduct. It is to be noted that the operation of the business conflicted in no way with appellant’s duties at the College and, in fact, for the past eight years he had maintained such business while so employed without complaint from the authorities. As to the alleged complaint that appellant had made pictures of a white girl in the nude which had been distributed in the city, there was absolutely no evidence of any such occurrence.
In emphasizing the basis for the charges filed against appellant on March 28, 1958, during the course of the hearing before the Commission, the Dean of Administration made the following observation:
“Mr. Walker:
“ * * * He indicated that we discharged him on the basis of a charge that he was operating a house for the purpose of prostitution. That was not our charge. We dismissed him on the complaint of that kind of charge, but we did not dismiss him on the basis of that charge.” (Tr. pg. 47) (Italics ours.)
And at page 77 of the transcript, as a witness on cross-examination,, the Dean testified:
“A. * * * We did not charge that he was operating a disorderly house as was the charge in the City Court.
“Q. How can you reconcile the statement you just made with your letter of January 23, 1958, marked A — 1, in which you made this statement. ‘You have been suspended for the reason of the conflict between the nature of your duties and responsibilities at the College and the complaint that you have been involved in the operation of an establishment being used for the purpose of prostitution’ ? Doesn’t that sentence charge him with using his place for prostitution?
“A. Is the word 'complaint’ a part of that sentence?
“Q. It is.
“A. Well, wasn’t there a complaint of that sort?” (Italics ours).
Essentially, therefore, the cause attributed for the dismissal of appellant from his duties as a night watchman was not because as a fact he was operating a place of prostitution but that complaints had been made to that effect and publicity given thereto in consequence of which his usefulness as a wátchman had been destroyed. The Commission’s finding, therefore, that the appellant was operating a business of disreputable character was not responsive to the *720 charge made by the authorities in dismissing appellant from his employment for the charges were confined to the fact that complaints of the operation of such an establishment and the publicity attendant thereto were sufficient cause to justify the discharge of appellant.
Moreover, however, we again point out that the issue before the Commission was not the truthfulness of the criminal charge but rested on the fact that complaints had been made as to the nature of the business operated by appellant and publicity given thereto. The basis, therefore, of the Commission’s conclusion that appellant was operating a business of disreputable character was on the complaint of such fact rather than on the proof thereof; and, in fact, its finding of fact that appellant operated a business of disreputable character was beyond the charges made against appellant for which he was called upon to disprove as same was confined to complaints of the operation of such an establishment rather than factual charges of proof thereof. In reaching this conclusion the Commission, in our opinion, disregards the basic tenant of the Civil Service amendment, that the discharge of an employee must be based upon cause. Mere rumor, which has been admittedly denied by appellant is not cause. The Commission itself recognized conduct as the crux of cause when it stated in its conclusions:
“The legal question to be determined by this Commission is whether or not the facts, as established before it, and relevant to the causes asserted in the letter of discharge, disclose that appellant’s conduct has been such that it would be detrimental to the efficiency of the service to continue him in his classified position.”
Appellant was employed as a watchman and as part of his duties in connection therewith he was called upon to patrol the campus and observe and report any misconduct noted by him on the part of the students. He was not assigned the duties pertaining to those exercised by the Dean of Men or Dean of Women but the Dean of Administration testified that discretion was vested in him to report any untoward conduct of the students and therefore he had to use discretion in determining whether or not activities observed by him should be reported to the authorities and it was his opinion that because of this relationship with the students his effectiveness was destroyed by the complaints and publicity given thereto that appellant was operating a disorderly house. In essence, the issue presented is that complaints of his conduct was such that it was detrimental and prejudicial to the duties assigned to him and was cause for his dismissal, the exercise of which was in the discretion of the appointing authority as concluded in the Broussard v. State Industrial School for Colored Youths, supra.
Where the employee is discharged for misconduct, fraud, theft, untruths, insubordination, such conduct is cause if not disproved. The conduct for which the appellant is dismissed in this instance was on the sole basis of complaints and publicity of such complaints that appellant was operating a disorderly house. There was not one scintilla of evidence disclosing the accusations to be true. The only basis for the charge are rumors, speculations, doubts, which have not, in our opinion, been shown to reflect on appellant’s duties at the College. If an employee is to be discharged solely on unfounded suspicion, the Civil Service amendment is of little value.
For these reasons, it is ordered that the judgment appealed from be reversed, annulled and set aside, and that appellant be reinstated in his former position; and it is further ordered that there be judgment in favor of appellant and against Northwestern State College of Louisiana for the back pay of appellant from March 28, 1958.