140 So.2d 5

Joseph W. LEGGETT

v.

NORTHWESTERN STATE COLLEGE.

No. 45874.

March 26, 1962.

Rehearing Denied April 30, 1962.

Jack P. F. Gremillion, Atty. Gen., Joseph H. Kavanaugh, Sp. Counsel to the Atty. Gen., for defendant-petitioner.

Cunningham & Cunningham, Natchitoches, for respondent-appellant.

HAWTHORNE, Justice.

Joseph W. Leggett, employed as a night watchman at Northwestern State College of Louisiana, in which position he was in the state classified service with civil service status, was dismissed from this position by the appointing authority effective March 29, 1958, for cause expressed in writing thus:

"Mr. Joseph W. Leggett
"313 North Street
"Natchitoches, Louisiana

"Dear Mr. Leggett:

" * * * this is notice of your dismissal from the position of Watchman effective on March 29, 1958.

"During the period of your suspension we made careful investigation and evaluation of your involvements at the Horn Street place of business.[1] We cannot afford to continue you in your Campus Security position in view of the fact that your involvements on Horn Street, in one or more of the ways listed below, have brought such discredit to you and to your character that your usefulness to us as a police officer has been destroyed.

"1.   In December of 1956 a colored female alleged that a colored male tried to rape her in the back room of your place of business.   The colored male told the City Police that he had paid you for the use of the room.   This colored female also made a statement in the presence of City Police Officers that you had propositioned her to go to the back room with you.   At the time of the investigation, the City Police asked you to remove the bed from the building, and you agreed to remove it.

"2.   On December 9, 1956, your supervisor, Mr. James K. Lee, gave you a written warning pertaining to the complaint concerning the alleged operation of a house for the purpose of prostitution.

"3.   A report was made to the City Police that you had made a picture of a white girl in the nude.   Some of these pictures were distributed in the City.   At the time of the report, the City Police again checked your place of business and found that the bed had not been removed. The City Police again advised you to remove the bed.

"4.   On December 28, 1957, you were charged in the City Court with the operation of a disorderly house.   According to the arresting officers, Mr. George H. Posey and Mr. Kenneth C. Maggio, they found Willie White, colored male, and Ellen Har-

1. [During the daytime Leggett operated a business of his own on Horn Street.]

dy, colored female, in the back room of your place. These two negroes admitted to the two officers and to Mr. Boyd B. Durr, Chief of Police, that each of them had paid you 50¢ for the use of the room. Further, on the date of your arrest, December 28, 1957, the officers found that the bed was still in the back room of your place.

"5. Your trial in the City Court was delayed on three occasions. First, because of the illness of your brother; second, because of the failure of your attorney to appear in court; and, third, because of the objection raised by your attorney that no City Ordinance was violated because there was none that defined the operation of a disorderly house. Witnesses in the case testified in City Court on February 24. The testimony of Vernon McClinton and Willie White was to the effect that they had paid you sums of money for the use of your back room. Ellen Hardy testified that she was in such an intoxicated condition that she could not remember the details of the occurrence.

"The above pleadings, separately or as a group, reflect on your morality in such a way that we cannot afford to use your services as a police officer having surveillance over the conduct of young college men and women and visitors to the College Campus. You have been fully aware of the fact that, as a police officer for the College, you come in frequent contact with men and women students and that you are called upon to exercise judgment and discretion in dealing with student disciplinary and other problems. The types of complaints as outlined above, together with the reputation you have attained through publicity of these charges, compelled us to conclude that College officials, students, and others affected cannot have reasonable confidence in your performance as a college police officer.

> "Yours very truly,
> "s/d George T. Walker
>
> "George T. Walker
> "Dean of Administration"

From this dismissal the employee appealed to the state Civil Service Commission, and that body after a hearing maintained Leggett's dismissal effective March 29, 1958, and dismissed his appeal. In due course an appeal was lodged in the Court of Appeal, First Circuit. That court reversed, annulled, and set aside the ruling of the commission and ordered that Leggett be reinstated to his former position as night watchman with back pay from March 28, 1958. 132 So.2d 715. The appointing authority applied for and was granted a writ of certiorari by this court.

The commission's formal findings of fact are set forth in its opinion as follows:

## "FINDINGS OF FACT

"In addition to his position at Northwestern State College, appellant and his wife operated a business establishment in the City of Natchitoches. Ostensibly the place was a studio for photography, but it additionally offered facility for dancing by music from a 'juke box.' The customers were predominantly Negroes. Towards the rear of the premises was a small room containing a cot with mattress.

"During December of 1956, the Chief of City Police requested appellant to remove the cot from his business establishment. Appellant's immediate Supervisor at the College also discussed the matter with him and suggested that he remove the cot, as there had been complaints that the place had been used for immoral purposes. Appellant agreed to cooperate, but failed to remove the cot. After a second warning from the police he removed the mattress from the cot.

"In December of 1957, appellant was charged in the City Court of Natchitoches with operating a disorderly house after an unmarried girl and married man, both Negroes, were discovered in the back room. The man testified that he had paid appellant 50¢ for the use of the room, solely to have a private conversation with the girl.

"Appellant was brought to trial in the City Court and was acquitted after the judge caused an examination of the premises to be made and received a report that the cot had been removed from the premises.

"The evidence before this Commission establishes beyond doubt the disreputable character of appellant's place of business.

"Appellant's duties as a campus watchman, working from 10:00 p. m. to 6:00 a. m., require him to counsel with student-couples who may be found together on the campus in the late hours; and to take them to the proper Deans in the event of any untoward occurrence. He is required to exercise discretion in his relations with students, and others who may be on the campus during his hours of duty. Although he has no direct disciplinary authority, his duties require that he have the respect of students and others whose conduct comes under his surveillance."

In affirming the dismissal of the employee the Civil Service Commission said in conclusion:

"The legal question to be determined by this Commission is whether or not the facts, as established before it, and relevant to the causes asserted in the letter of discharge, disclose that appellant's conduct has been such that it would be detrimental to the efficiency of the service to continue him in his classified position.

"This Commission is in agreement with the employing authority that one operating

a business of such questionable character as disclosed by appellant's own testimony is unfit to hold a position requiring surveillance over the conduct of students and others on a college campus. (Cf. Broussard v. State Industrial School, 231 La. 24, 90 So.2d 73.)"

The Court of Appeal in reversing the commission concluded that the commission's finding that Leggett was operating a business of disreputable character was not responsive to the charge made by the authority in dismissing him, the charge being confined to the fact that complaints of the operation by him of a business of disreputable character and the publicity attendant thereto were sufficient cause to justify his discharge. 132 So.2d 715. The court further concluded:

"The conduct for which the appellant is dismissed in this instance was on the sole basis of complaints and publicity of such complaints that appellant was operating a disorderly house. There was not one scintilla of evidence disclosing the accusation to be true. The only basis for the charge are rumors, speculations, doubts, which have not, in our opinion, been shown to reflect on appellant's duties at the College."

We are in full accord with the Court of Appeal that complaints and publicity of such complaints, and, we might add, gossip or rumors of improper conduct, are not of themselves legal cause for the discharge of an employee in the civil service. When it is established, however, that these complaints are based on facts which are found to be true by the commission, then it is the duty of the commission to determine whether there is a real and substantial relation between the conduct of the employee and the efficient operation of the public service; and if the commission determine that there is, then there is legal cause for disciplinary action.

The written causes for dismissal in the instant case recite in detail five incidents which the appointing authority considered to be of such a nature as to bring Leggett into disrepute and to destroy his usefulness to the college as a police officer. The commission found that some if not all of the incidents alleged as causes for dismissal were true, and concluded under this finding that "the evidence before this Commission establishes beyond doubt the disreputable character of appellant's place of business".

If, as the Court of Appeal considered, the specific incidents alleged as causes for dismissal were mere complaints and publicity of complaints, then it became the duty of the commission to ascertain whether these complaints and the attendant publicity were based on facts. This it did, and having ascertained that the complaints had a basis in fact, the commission found

that the evidence adduced proved the disreputable character of Leggett's place of business. The opinion of the Court of Appeal stated that there was not one scintilla of evidence to establish as true the accusation that Leggett was operating a disorderly house. The commission did not find that the discharged employee was keeping a "disorderly place" as such a place is defined in R.S. 14:104, the keeping of which is made a crime. But the facts found by the commission clearly established the disreputable character of his place of business.

In cases of this kind appellate or reviewing courts are called upon to answer only questions of law, and the decisions of the Civil Service Commission are final on the facts. Under this principle of law the courts cannot consider the weight or the sufficiency of the evidence, and it is only where there is no evidence that a question of law arises.

In the instant case we have read the evidence adduced before the commission, and are satisfied that there was evidence to support the commission's finding that Leggett's place of business had a disreputable character.

Under the Constitution of this state, Article 14, Section 15(O) (1), the decision of the Civil Service Commission is final on the facts, and appeals may be granted to the courts on questions of law

alone. Under this mandate it is the duty of the courts to accept the findings of fact made by the commission and to determine whether under such facts there exists legal cause for disciplinary action, for the Constitution, Article 14, Section 15(N) (1), also provides that no person in the classified service who has acquired permanent civil service status shall be demoted, dismissed, or discriminated against except for cause expressed in writing by the appointing authority.

Under these provisions of the Constitution the courts may not inquire into the sufficiency of the evidence to ascertain whether the commission was correct in its finding of fact, and if there is any evidence to support its finding of fact, such finding may not be disturbed. Consequently if the facts found by the commission disclose legal cause for disciplinary action, there is nothing for the courts to review.

Legal cause for disciplinary action exists if the facts found by the commission disclose that the conduct of the employee impairs the efficiency of the public service. Of course there must be a real and substantial relation between the conduct of the employee and the efficient operation of the public service; otherwise legal cause is not present, and any disciplinary action by the commission is arbitrary and capricious.

It is the duty and function of the commission to determine from the facts whether there exists a substantial relation between the employee's conduct and the efficient operation of the public service, and it is well settled in the jurisprudence that in civil service cases if there is any evidence before the commission showing that the employee's conduct is prejudicial to the service, its ruling will not be disturbed. See Konen v. New Orleans Police Department, 226 La. 739, 77 So.2d 24; Gervais v. New Orleans Police Department, 226 La. 782, 77 So.2d 393; Marchese v. New Orleans Police Department, 226 La. 982, 77 So.2d 742; Jais v. Department of Finance, 228 La. 399, 82 So.2d 689; Barclay v. Department of Commerce and Industry, 228 La. 779, 84 So.2d 188; Broussard v. State Industrial School, 231 La. 24, 90 So.2d 73; Daniels v. New Orleans Police Department House of Detention, 236 La. 332, 107 So.2d 659.

This court in Brickman v. New Orleans Aviation Board, 236 La. 143, 107 So.2d 422, in reversing the commission and ordering reinstatement of the employee there involved evidently did not follow the principle of law that if there is any evidence before the commission from which a conclusion can be drawn that the employee's conduct is prejudicial to the service, the commission's ruling will not be disturbed; and in failing to apply this principle of law in that case we now think we erred.

The commission found that the evidence before it in the instant case established beyond doubt the disreputable character of Leggett's business. It also found as a fact that his duties as a college watchman required him to counsel with student couples and in the event of improper conduct to take them to the appropriate dean, to exercise discretion in his relations with the students at the college, and to have the respect of the college students. The commission found that the facts disclosed that Leggett's conduct had "been such that it would be detrimental to the efficiency of the service to continue him in his classified position", and that he was unfit to hold the position from which he had been discharged. In short, the commission found that it would be detrimental to the efficiency of the service to retain this employee as a college watchman.

Since there was evidence adduced to support this finding, this court certainly cannot conclude that the commission's finding in this case was arbitrary and capricious; that is, we cannot say that under the facts found by the commission there was no real and substantial relation between the conduct of Leggett and the efficient operation of the public service.

In this court counsel for Leggett makes much of the fact that Leggett was tried in the Natchitoches city court on the charge of keeping a disorderly house and found

not guilty. This proves, it is argued, that he was innocent of the charges, but was dismissed nevertheless because of bad publicity resulting from these unjust charges. This line of reasoning is not convincing. In Daniels v. New Orleans Police Department House of Detention, 236 La. 332, 107 So.2d 659, Daniels was dismissed from the post of warden of the house of detention in New Orleans because of irregularities in the handling of the petty cash fund there. On appeal to this court from a finding of the commission affirming his dismissal Daniels argued that he had been indicted for having committed theft from the petty cash fund, but that he was tried by a jury and acquitted, and that this acquittal in the criminal court established a prima facie case for his contention that his dismissal was arbitrary, capricious and without reasonable cause, causing the burden of proof to shift to the appointing authority to justify the dismissal. This court pointed out that Article 14, Section 15(N) (1), of the state Constitution specifically provides that on appeal to the Civil Service Commission the burden of proof as to the facts is on the employee, and held that Daniels' acquittal in the criminal district court was a fact which could be considered by the commission as any other fact in the case, but did not change the constitutional mandate as to the burden of proof. By analogy to the Daniels case, Leggett's acquittal in the city court was only a fact which the commission could consider in deciding the case, and nothing more.

For the reasons assigned the judgment of the Court of Appeal is annulled and set aside, and the ruling of the Civil Service Commission affirming the discharge of the employee Joseph W. Leggett and dismissing his appeal is reinstated and affirmed.

FOURNET, Chief Justice (concurring).

While I am in full accord with the views expressed by the majority with respect to the law controlling in this case and its application to the facts as found by the Civil Service Commission, I can find no justification whatsoever for the statement contained in the opinion to the effect that this court in ordering the reinstatement of the employee in Brickman v. New Orleans Aviation Board, 236 La. 143, 107 So.2d 422, "did not follow the principle of law that if there is any evidence before the commission from which a conclusion can be drawn that the employee's conduct is prejudicial to the service, the commission's ruling will not be disturbed * * *."

A perusal of the opinion rendered on rehearing in that case will readily disclose that such principle of law formed no basis for the decision. Instead, the court held

that the facts as found by the commission[1] presented "no legal cause for which appellant could constitutionally be subjected to disciplinary action * * *."

1. These facts, as set out in the opinion, were that the plaintiff's record as a city employee to the date of discharge was untarnished; that there was not the slightest reflection in the record upon her ability or industry; that the demands made upon her and her attempt to comply, required time and effort far beyond the call of duty; and that prior to her dismissal on July 26, 1956, the plaintiff had been a competent and faithful employee of the City of New Orleans. In view of these facts the court pointed out: "While as noted in our original opinion herein 'we are without authority to examine into the sufficiency of the evidence to establish adequate reasons for the discharge of an employee,' we have not only the authority but the constitutional duty when such question is raised * * * to determine whether the assigned reasons for disciplining a classified employee, accepting the Civil Service Commission's determinations of fact, do indeed (as required by our Constitution, Article XIV, Section 15(N) (1), see above) constitute adequate cause for any disciplinary action. We, therefore, must hold that the Commission *incorrectly concluded as a matter of law*, after having made the above factual findings, that the appellant had not borne her burden of proving that the appointing authority had acted arbitrarily and without adequate reason (cause) in subjecting her to disciplinary action." (The emphasis and matter in final brackets, i. e., (cause), have been supplied by me.)