McBRIDE, Judge.
Lawrence J. Nuss, who was a member of the New Orleans Police Department, is appealing from the decision of the Civil Service Commission of the City of New Orleans (sometimes hereinafter called the “Cnmmission”), which affirmed appellant’s dismissal by the Superintendent of the Police Department from the position of patrolman.
The dismissal took place on February 16, 1962, for the causes expressed in the letter of that date written by the Superintendent to Nuss reading:
“DEPARTMENT OF POLICE
“2700 TULANE AVENUE
“NEW ORLEANS, LOUISIANA
“February 16, 1962
“Patrolman Lawrence Nuss
“3211 Dahlia Walk
“New Orleans, Louisiana
“Dear Patrolman Nuss:
“At approximately 11:35 P.M., January 30, 1962, Major Raymond Ruiz, Field Supervisor, arrested Patrolmen Donald Sauviac and Emile Nolan, charging them with Public Bribery.
“A complete investigation was conducted and it revealed that on Thursday, January 25, 1962, some time between 7:00 P.M. and 10:00 'P.M., Patrolman Gerald Hirt, while in your company, did enter into an agreement with Michael Miller to have Carl B. Tew paroled for the sum of $50.00. At this time Patrolman Hirt accepted $50.-00 from Michael Miller, however, later that night he returned the money to Miller, advising him that he was only able to have Carl B. Tew paroled on the criminal charge of possession of stolen property.
“Your being present while Patrolman Hirt entered into such an agreement, *658 and while he received and returned $50.00 as above outlined, made you a party to these transactions because you failed to report them as required by-Article 21 of the Code of Conduct entitled ‘Reporting Infractions.’ As such, you are involved in serious violations of Articles 27, 39 and 43 of the Code of Conduct, which read as follows:
"ARTICLE 27 — STANDARD OF ETHICS
“ ‘A member shall always conduct himself in accordance with the highest degree of morality which is required of the law enforcement profession.
“He shall act in a manner which will not reflect discredit upon himself or the Department.’
"ARTICLE 39 — ACCEPTING, GIVING ANYTHING OF VALUE
“ ‘A member shall not accept or offer to accept anything of apparent present or prospective value from, or give or offer to give anything of apparent present or prospective value to, any person, or otherwise obtain anything of apparent present or prospective value, which may influence him in the performance of duty.’

"ARTICLE 43 —SEEKING RELEASE OF PRISONERS

“ ‘A member shall not become surety or solicit the release or discharge from custody of any arrested person, except where such release or discharge occurs as a result of the performance of duty.’
“The investigative report further indicates that on Friday, January 26, 1962, some time between 8:00 P.M. and 9:00 P.M., Patrolman Hirt advised Michael Miller, in your presence, that Carl B. Tew had been paroled on the, contributing to the delinquency of a juvenile charge and was home. Thereafter, in your presence, Patrolman Hirt received from Michael Miller $50.00 as per the agreement. After Patrolman Hirt received this money, you did, in company with Patrolman Gerald Plirt, Donald Sauviac and Emile Nolan, enter into an agreement with Michael Miller to have original charges pending against Carl B. Tew dropped for the sum of $350.00.
“Your being present while Patrolman Hirt received $50.00 as outlined above, and your entering into a conspiracy to have pending charges against Carl B. Tew dropped as above outlined, made you a party to these transactions because you failed to report them as required by Article 21 of the Code of Conduct. As such you are involved in a serious violation of Articles 27, 39 and 43 of the Code of Conduct heretofore quoted.
“All of the above outlined incidents took place at or near the intersection of Bourbon and Toulouse Streets, except the conspiracy to have pending criminal charges against Carl B. Tew dropped, which occurred just inside the Toulouse Street entrance to the French Opera Parking Lot, located at Toulouse and Bourbon Streets
“I have read all statements made by you in connection with this matter and studied the investigative report pertaining to this incident. It is obvious that you have been untruthful in this entire matter.
“Your untruthful statements involve serious violations of Articles 30 and 82 of the Code of Conduct, which read as follows:
“ARTICLE 30 — TRUTHFULNESS
“ ‘A member shall be truthful in his conduct toward all persons.’
-“ARTICLE 82 — FALSE OR INACCURATE REPORTS
“ ‘A member shall not knowingly make, or cause or allow to be made, a *659 false or inaccurate oral report or written record of an official nature.’
“As a result of the stated misconduct, I have no alternative hut to dismiss you effective immediately.
“Very truly yours,
“/s/ JOS. I. GIARRUSSO
“JOS. I. GIARRUSSO
“Superintendent of Police”
Nuss exercised his right of appealing his dismissal to the Commission which, on July 23, 1962, affirmed the action of the Superintendent of Police:
“RULING OF CIVIL SERVICE COMMISSION ON APPEAL
J{? * 5}C ífc ‡ ‡
“This appeal grows out of the subject matter in the appeals of Sauviac and Nolan, Nos. 333 and 334, respectively, of the docket of this Commission, which involve alleged and attempted public bribery.
“The Superintendent of Police dismissed the appellant, Lawrence J. Nuss, by letter in writing as follows:
“(The Commission then quotes the Superintendent’s letter.)
“As set forth in the facts by this Commission in the Sauviac and Nolan cases, Carl B. Tew, identified as a French Quarter inhabitant, had been arrested . and charged with possessing stolen property and contributing to the delinquency of a minor.
“On January 25, 1962, cine Patrolman Gerald Hirt met with one Michael Miller, an’ex-Navy man and also identified as'a French Quarter inhabitant, during which conversation a plan was discussed whereby Carl B. Tew would be paroled upon the payment of $50.00. The appellant, Lawrence J. Nuss, was in company with Hirt and Miller at the time that the plan was discussed by them. At that time Patrolman Hirt received $50.00 from Michael Miller and later that night returned the money to Miller because Hirt could not perform. Then on January 26th, Hirt and Miller met again at Bourbon and Toulouse Streets, at which time Miller redelivered to Hirt the sum of $50.00.
“Because of his part in the case, Patrolman Hirt was discharged by the Superintendent of Police but he did not appeal.
“It was not until after the investigation had been completed in the Sauviac and Nolan cases and action of dismissal taken against them by the Superintendent that the Superintendent then proceeded on the facts discussed to take action against Hirt and Nuss,
“Major Raymond Ruiz testified that he questioned Nuss in the presence of Investigator Lonergan of' the Police Department, at which time the facts in connection with the Tew matter were discussed. Also present was Nuss’ attorney. Ruiz informed them that Nuss had been picked- out of the lineup as the one involved with Tew. Later in the office of the Superintendent, Nuss, Hirt and another patrolman by the name of Slicho were also present, together with their attorneys. Nuss cooperated in giving a statement and did not refuse to answer questions. The Grand Jury investigated the matter but returned a ‘No True Bill.’
“Nuss, although present in the hearing, did not take the stand. Former Patrolman Hirt was reportedly out of the state and his testimony was not obtained. However, the testimony of Superintendent Giarrusso, Major Ruiz and Ed Vidou, cab driver, stands un-contradicted to the effect that Nuss was in the presence of Miller and Hirt at 9:00 P.M. on January 25th and therefore Nuss had full cognizance of the plan of public bribery that existed between Miller and Hirt.
*660 “It is standard operating procedure in the Police Department that any law violation coming to the attention of an officer should be promptly reported by him to his superiors. Further, Article 21 or the Police Code of Conduct requires the prompt reporting of facts involving a violation of the law. By his silence over a period of days, Patrolman Nuss, in addition to violating Article 21 of the Police Code of Conduct, became a party to the violations of Articles 27, 39 and 43, and the untrue statements made by him involve a further violation of Articles 30 and 82.
“In view of the foregoing, the Commission concludes that the action of the Superintendent of Police was based upon fact and represented disciplinary action which was supported by such facts. The Commission further rules that the action of the Superintendent was not arbitrary and did not result from any political or religious motives.
“The appeal is, therefore, dismissed.
“NEW ORLEANS, LOUISIANA, July 23, 1962.
“CITY CIVIL SERVICE COMMISSION
“/s/ LEON SARPY
“Leon Sarpy, Chairman
“APPROVED:
“/s/ A. E. PAPALE
“Commissioner
“/s/ ROBERT G. POLACK
“Commissioner
“ATTEST:
“/s/ WTLLTAM W. SHAW
“William W. Shaw
“Director of Personnel”
No person in the classified service, having acquired permanent civil service status, shall be demoted, dismissed or discriminated against, except for cause, expressed in writing by the appointing authority. There is vested in the appropriate civil service commissions for the several cities the exclusive right to hear and decide all appeals and the legality of all removal and disciplinary cases. The burden of proof on appeal as to the facts shall be on the employee and the decision of the appropriate civil service commission shall be final on the facts. The decisions of civil service commissions are appealable to the courts of appeal on any question of law. LSA-Const. 1921, Art. 14, § 15(N) (1) and § 15(0) (1).
Where the decision of the Commission is based on substantial evidence, the court may not consider the weight or sufficiency thereof. Marchese v. New Orleans Police Department, 226 La. 982, 77 So.2d 742; Gervais v. New Orleans Police Department, 226 La. 782, 77 So.2d 393; Konen v. New Orleans Police Department, 226 La. 739, 77 So.2d 24.
It is the duty and function of the Commission to determine from the facts whether there exists a substantial relation between the employee’s conduct and the efficient operation of the public service, and it is well settled in the jurisprudence that in civil service cases if there is any evidence before the Commission showing that the employee’s conduct is prejudicial to the service, its ruling will not be disturbed. Leggett v. Northwestern State College, 242 La. 927, 140 So.2d 5; Daniels v. New Orleans Police Department House of Detention, 236 La. 332, 107 So.2d 659; Broussard v. State Industrial School for Colored Youths, 231 La. 24, 90 So.2d 73; Barclay v. Department of Commerce and Industry, 228 La. 779, 84 So.2d 188; Jais v. Department of Finance of City of New Orleans, 228 La. 399, 82 So.2d 689; Marchese v. New Orleans Police Department, supra; Gervais v. New Orleans Police Department, supra; Konen v. New Orleans Police Department, supra.
*661 The appellant advances several contentions and maintains that his dismissal was improper and unauthorized for these reasons :
1. That the finding of the Commission is inconsistent with the law and the evidence and was arbitrary and capricious.
2. That the Commission’s finding insofar as it is based on the fact that Nuss was discharged because he failed to report certain illegal actions and as such violated Art. 21 of the Code of Conduct of the New Orleans Police Department entitled “Reporting Infractions,” was improper because there is no evidence going to show that Nuss knew or had any direct knowledge of the alleged infraction in question.
3. That the Commission permitted certain oral and documentary evidence to enter the record despite the objection of his counsel that such evidence was hearsay and inadmissible.
4. That the Commission refused to consider or give any weight at all to a certified copy of a “No True Bill” of the Grand Jury for the Parish of Orleans which body investigated the alleged infraction in which Nuss was purportedly involved.
5. That the Commission positively refused to take into consideration in their deliberations evidence and proof that political motivation was a serious factor on the part of the employee either directly or indirectly.
We find no merit in any of appellant’s contentions that the findings of the Commission are improper, unauthorized, arbitrary or capricious or that the dismissal of the appellant was illegal and unwarranted. The record abounds with competent evidence to support the findings of fact made by the Commission which set forth the despicable actions of the appellant leading to his dismissal by the Superintendent of Police. There may be in the record some evidence that might be considered of the hearsay variety, but even eliminating this from all consideration, there still remains sufficient proof to support the findings of fact which are before us. It may be, too, that the cab driver, Vidou, made statements to the investigating police which are diametrically at variance with the testimony he gave before the Commission, but this would be no reason for disregarding what Vidou had to say under oath in the proceedings. The Commission chose to believe Vidou’s statements made before it, and we are powerless to delve into the question of the weight or sufficiency to be accorded them. Counsel for appellant strenuously argued that there is no proof in the record whatever to show that Nuss saw the money passed on the three occasions or that he heard any conversations taking place between Hirt and Miller. The uncontradicted evidence shows that Nuss on the three occasions in question was only two or three feet removed from Miller and Hirt and no person of open mind could fail to believe that he both saw and heard the illegal transactions which took place. The Commission and this court are right in taking judicial notice of the propensities of the human senses, and it is an inevitable conclusion that one is to be held to have heard what he could have heard and to have seen what he could and should have seen.
The Commission acted correctly in refusing to consider or to give any weight whatsoever to the certified copy of the “No True Bill” of the Grand Jury for the Parish of Orleans, which investigated the infractions to which Nuss is said to have been a party. Under our law, proceedings before the Grand Jury are shrouded with secrecy and the Commission, of course, had no knowledge of what took place during the Grand Jury proceedings nor do we. We do not think that because the Grand Jury rendered its “No True Bill” that such would serve to absolve Nuss from disciplinary action by the Superintendent of Police. The fact that a “No True Bill” was returned has no effect in the matter at hand any more than a “True Bill” would have if such had emanated from the Grand Jury.
*662 We can brush aside with little comment the contention made that there should have been evidence in the record to show that appellant knew that there was an infraction of police regulations. Again, we can take judicial notice of a fact and that is that being a policeman, Nuss was familiar with the regulations of the Department.
Counsel for appellant strenuously argue that there is an absence of any evidence whatever showing that Nuss accepted anything from Miller or received any part of the bribe money that Miller paid Hirt. The Superintendent in his letter of dismissal stated:
“Your being present while Patrolman Hirt entered into such an agreement, and while he received and returned $50.00 as above outlined, made you a party to these transactions because you failed to report them as required by Article 21 of the Code of Conduct entitled ‘Reporting Infractions.’ As such, you are involved in serious violations of Articles 27, 39 and 43 of the Code of Conduct, * *
Superintendent Giarrusso, while under cross-examination, stated that he believed that Nuss shared in the $50, and that such belief forms the basis of the charge that he had taken the bribe. We have read the testimony pertaining to this charge, and our conclusion is that the Superintendent was justified in concluding that Nuss was the recipient of part of the money. There is evidence given by Vidou which points up such a conclusion. Vidou said that he spoke to Officer Hirt in the presence' of Nuss, and Hirt asked Vidou “Did I'know this fellow and I told him, ‘Well, he sells jewelry up and down the street.’” Vidou then told Hirt he had known Miller for a few years and thereupon the two officers, Hirt and Nuss, walked away, ánd one of them said “Well we can make an easy $50.00.”
There is one strange circumstance connected with the hearing before the Commission. Although he was present and heard the damaging evidence, Nuss did not take the witness stand and give his testimony, nor did he produce any witnesses. He was content to rest on the cross-examination of the adverse witnesses. If Nuss-was innocent in that he neither saw nor heard the bribe transaction nor received any part of the $50, he himself would have been1 in the best position to bring that home tO' the Commission. Yet he was content to remain silent, even though as appellant to the-Commission the burden rested upon him to show the- illegality of his dismissal. The testimony against him went uncontradicted. The law is too plain to warrant citation of authorities that where a party fails to produce a material witness, the legal presumption is that the testimony which the witness-, would have given would be against the liti- ■ gant’s interest. How much stronger that rule should prevail where the defendant bearing the burden of proof does not himself take the witness stand and testify to matters within his knowledge. If the facts . as developed at the hearing would have-been favorable to Nuss without his having-testified, perhaps, then, his nonappearance as a witness would have been justified.
As stated at the outset, it is the duty of the Commission to determine from the facts . whether there exists a substantial relation between, the employee’s conduct and the efficient operation of the public service. We thoroughly agree with the Commission that the retention of Nuss as a member of the New Orleans Police Department would be incompatible with its efficient operation and his dismissal was proper.
The ruling of the Commission whichi Nuss has appealed from is affirmed.
Affirmed.