GROVER L. COVINGTON, Chief Judge.
John McKeller, a Building Maintenance Superintendent III with the electrical department at Louisiana State University in Baton Rouge, was dismissed from his permanent position on March 6, 1981. The letter of termination charged him with 1. Poor attitude; 2. Failure to familiarize himself with the campus electrical system; 3. Failure to accomplish work assigned to his department in a timely manner; and 4. Improper handling of paperwork.
McKeller appealed his dismissal to the Louisiana Civil Service Commission, which conducted a public hearing before a referee appointed by the Commission on February 26, 1982 and on March 3, 1982, in Baton Rouge. From a decision of the Commission upholding the appointing authority’s action, McKeller has appealed, and we affirm.
FACTS
In 1978 McKeller was hired as Building Maintenance Superintendent III with the electrical department at the L.S.U. Physical Plant in Baton Rouge. A job description of his duties included the requirement that he be available on a twenty-four hour basis to direct and supervise the repair of electrical utility breakdowns of an emergency nature, that he make repairs within his ability as an electrician, that he assign and direct work crews and obtain replacement parts in order for repairs to be timely made, and that he • review and approve reports and invoices so that parts and supplies could be ordered by his department and paid for by the L.S.U. accounting department. The Commission found the following facts to support the charges upon which his dismissal was based.
1. Poor Attitude
Based on the following facts, the Commission concluded that the appointing authority had borne the burden of proving that McKeller failed to make himself available for emergency electrical calls and that he exhibited a poor professional attitude in dealing with other employees of the Physical Plant and toward his work.
On April 15, 1980, there was an electrical fire in one of the coolers at the L.S.U. Union. The Preventive Maintenance Department (hereafter called PM Dept.) was contacted at about 4:00 p.m. on that day and asked to restore power as soon as possible, because the cooler contained a large quantity of food. Since the personnel of PM Dept, were not electricians, they were unable to solve the problem and telephoned McKeller to get the power restored. McKeller responded by instructing them to try to restore power to the cooler; and, if unsuccessful, to move the food to another cooler until the next day when he could get the parts to repair the cooler. McKeller declined to go to the L.S.U. Union to determine the cause or extent of the damage to the cooler, or whether it was necessary to obtain parts to restore power to the cooler. It was not until the next day that the cooler was repaired.
On Saturday, April 19, 1980, at about 5:00 p.m., a power failure occurred causing outages to street lights and to several buildings on campus. Mr. Richardson, the Maintenance Supervisor in PM Dept, then on duty, was called on to restore power to the area. He tried, without success, to reset the electrical feeders that supply power to this area. Finally, he called McKeller’s home for assistance, but was unable to contact McKeller. McKeller’s *587 wife answered the phone. Richardson related the problem to her and waited for McKeller to come to the phone. McKeller did not come to the phone or send a message by his wife. Thus, appellant was unavailable and was not heard from during the emergency situation. Other arrangements to remedy the situation had to be made.
On Saturday, August 2, 1980, the Circulation Department of the L.S.U. Main Library experienced a power failure. After PM Dept, personnel tried, unsuccessfully, to restore power, McKeller was telephoned. He declared that the outage was not an emergency, and would not have the power restored until the next day despite the fact that the Circulation Department is responsible for processing all incoming and outgoing books and was unable to function without lights.
In April, 1980, two electricians under McKeller’s supervision, were designated to assist a pump crew which had been assigned to check all pumps on campus. At .the same time, another electrical crew was assigned to repair a pulley needed to lift a basketball goal. (The goal was lying across the pole vault area, and a track meet was scheduled in a few days.) The electrical foreman called Central Shops to make a bushing needed to repair the pulley to lift the goal. Central Shops could not make the bushing at that time because the personnel needed to make the bushing were working with the pump crew. McKeller reacted by pulling the two electricians assigned to the pump crew off the job in retaliation for Central Shop’s failure to make the bushing. The lack of cooperation and assistance by the electricians caused unnecessary problems and delays for the accomplishment of the work of the pump crew.
At one of the daily meetings, McKeller told the Director of the Physical Plant that he had more important things to do than bother with paperwork. His attitude toward this important duty of his job was further illustrated by his tardiness in attending a seminar, which was specifically conducted to inform and educate supervisors on the proper handling of paperwork for the department and his day-to-day handling of paperwork.
2. Failure to Familiarize■ Himself With the Campus Electrical System
Based on the following facts, the Commission found that the appointing authority had borne its burden of proving that McKeller failed to familiarize himself with the campus electrical system.
In May of 1980, McKeller had to call upon the Superintendent of the electrical department to repair a power outage at the Life Science Building which had occurred about four hours earlier. The Superintendent arrived on the scene and found that a bus-bar had tripped the circuit breaker, which he then easily reset and restored the power. McKeller had not bothered to familiarize himself with the electrical system so that he could cope with a routine situation.
On July 15,1980, the Superintendent was summoned to restore power to the Nicholson Drive Apartments. Upon arriving at the Apartments, he discovered a loose wire on one of the electrical poles, which he routinely repaired.
3. Failure to Accomplish Work Assigned to His Department
Based on the following facts, the Commission found that the appointing authority had borne its burden of proving that McKeller failed to accomplish work assigned to his Department.
One of the responsibilities of his job was to order and receive supplies and do the proper paperwork in connection therewith. On May 7, 1980, the electric circuit breaker for the chillers at the Field House failed. The Assistant to the Director of the Physical Plant, reported this failure to McKeller. Power was restored to the chillers the next day by by-passing the old circuit breaker that needed repairing, which constituted a temporary repair. McKeller did not get around to ordering the parts for making *588 permanent repairs to the circuit breaker until three months later, although the “repair” created a risk of outage or electrical fire.
In September, 1979, a circuit breaker for the condenser water pump at the CEBA Building failed. McKeller neglected to order a new breaker until February 13, 1980.
McKeller failed to make proper arrangements to ascertain that lights outside the Law School Auditorium would turn on for the occasion when an important visiting dignitary was to speak at the School. When the event was held, the lights would not turn on and could not be taken care of because McKeller did not perform his specifically assigned work.
4. Improper Handling of Paperwork
Based on the following facts, the Commission found that the appointing authority had borne its burden of proving McKeller failed to handle properly the paperwork of the Department.
On October 25, 1979, May 22, 1980, May 29, 1980 and August 14, 1980, the Staff Assistant in charge of accounting at the Physical Plant, discussed the procedures for handling the necessary paperwork of the department in meetings which were attended by McKeller and other supervisory personnel. When McKeller was spoken to individually concerning paperwork, he said he was not hired to do paperwork. Numerous complaints were made concerning McKeller’s inattention to and neglect of the necessary paperwork for purchasing supplies, and several suppliers threatened to discontinue supplying L.S.U. Physical Plant unless the paperwork was properly processed so that they could be promptly paid. Legal cause for disciplinary action exists when the conduct complained of impairs the efficiency of the public service in which the employee is engaged. Leggett v. Northwestern State College, 242 La. 927, 140 So.2d 5 (1962).
Our review of the record herein convinces us that McKeller was discharged for legal cause. Each and every reason assigned for appellant’s dismissal was established by a preponderance of the evidence. Dundy v. Louisiana State University in Baton Rouge, 394 So.2d 650 (La.App. 1st Cir.1980). A real and substantial relationship existed between each act of improper conduct and the efficient operation of the department. Viator v. City of New Iberia, 428 So.2d 1329 (La.App. 3rd Cir.1983).
The appointing authority has proven the charges against McKeller by a preponderance of the evidence, and thus was within its rights in dismissing John McKeller for the causes hereinabove mentioned.
The ruling of the Commission upholding the appointing authority’s termination of the appellant is affirmed at his costs.
AFFIRMED.