WARD, Judge.
This appeal arises from the dismissal by the City Department of Health of Emergency Medical Technician Assistant, Linda Richard, because she failed to follow established procedures for receiving, handling and dispatching emergency units to a 911 call which allegedly resulted in the death of Steven M. Posterman. The City of New Orleans Department of Health is the appointing authority in this instance. Ms. Richard appealed her dismissal to the Civil Service Commission which modified the Appointing Authority’s action to a suspension, effective May 16, 1989.
The Appointment Authority appeals the Commission’s action. We affirm.
At approximately 5:45 p.m. on April 23, 1989, Sheila Posterman called 911 for help with her drunken husband. Mrs. Poster-man informed Ms. Richard that her husband had been drinking beer “for the last couple of days” followed by a half bottle of rum. During the course of the conversation, Mrs. Posterman told Ms. Richard that her husband had a history of heavy drinking and that she had been through this with him in the past. Mrs. Posterman indicated she wanted to take her husband to a detoxification center and said she could get him there but needed to know the location of such a unit. She stated she did not need an ambulance.
Further in the conversation, Ms. Richard advised Mrs. Posterman that if an ambulance was needed it would be a while before one was available. Again, Mrs. Post-erman advised she could get her husband to a de-tox center if she had an address. Ms. Richard gave Mrs. Posterman the location of Charity Hospital and told her to call back if she needed an ambulance. In ending the conversation with Mrs. Posterman, Ms. Richard incorrectly identified herself as “Operator 53” when in fact her number was “56”. Shortly, after this conversation, Mrs. Posterman did call back asking for an ambulance but was unable to speak to Ms. Richard because of the incorrect Operator number. Mrs. Posterman spoke to a different emergency technician who did not dispatch an ambulance. After another request the next morning an ambulance was sent to the Posterman residence; however, Stephen M. Posterman, Mrs. Posterman’s husband, was dead upon its arrival.
Urging two assignments of error, the Appointing Authority argues that the Commission abused its discretion in not upholding the dismissal and thus the Commission’s judgment was manifestly erroneous.
The standard of review in Civil Service cases is whether the Civil Service Commission’s finding is arbitrary, capricious or is manifestly wrong. Abadie v. Department of Streets, 480 So.2d 425 (La.App. 4 Cir.1985) writ denied 481 So.2d 1351 (La.1986).
A Civil Service employee cannot be discharged except for legal cause. Louisiana Constitution, Article 10, Section 8.
Legal cause for disciplinary action exists if the facts found by the Commission show that the conduct of the employee impairs the efficiency of the public service. Leggett v. Northwestern State College, 242 La. 927, 140 So.2d 5 (La.1962). The legal basis for any change in a discipli *694 nary action can only be that sufficient cause for the action was not shown by the appointing authority. Branighan v. Department of Police, 362 So.2d 1221 (La.App. 4 Cir.1978) writ denied 365 So.2d 247 (La.1978).
A procession of witnesses for both Ms. Richard and the Appointing Authority presented conflicting and somewhat confusing testimony concerning dispatching and record keeping procedures.
In her testimony before the Commission, Ms. Richard detailed her professional credentials, training and experience. When questioned about her failure to dispatch an ambulance to Mrs. Posterman, Ms. Richard explained that the emergency medical unit does not normally dispatch ambulance assistance to drunk calls as this is usually left to the New Orleans Police Department for safety reasons. However, Ms. Richard stated that had Mrs. Posterman requested an ambulance she would have sent one.
During the Commission hearing and also in its brief, the Appointing Authority strenuously argued that Ms. Richard was derelict in her duty by not following “established procedure” which among other things consisted of asking routine questions which would have allowed Ms. Richard to assess Mr. Posterman’s medical condition thereby either substantiating or obviating the need for medical assistance.
Ms. Richard responded to this charge by informing the Commission that, contrary to the testimony of the Authority’s witness, there was no standard procedure to follow. She emphatically stated she was never given a set of questions to ask a caller nor was she ever given specialized training for her job in the Communication Center as a dispatcher. Ms. Richard did acknowledge a familiarity with and accessibility to the text “Guidelines for Communication Center” which was required reading for all dispatchers. However, a review of the text confirms Ms. Richard’s assertions that the document does not provide a list of questions to employ.
Ms. Richard called three present and former co-employees, who at one time or another worked in the Communication Center as dispatchers. They corroborated her testimony and further informed the Commission that the determination to dispatch an ambulance is a judgment call which varies according to the nature of the 911 call. The “Guidelines for Communication Center” text lends support for the judgment-call testimony. Quoting from page 1: “NOTE: It is your responsibility to try to determine the need for an ambulance.”
As for the Authority’s contention that Ms. Richard failed to follow procedure in not logging Mrs. Posterman’s call, Mr. Marvin Huling, the Operations Manager for the emergency medical services system, Ms. Richard’s supervisor, and Ms. Dawn Orgeron, the Administrator of the system both testified detailing the record keeping procedures of the Communications Center. Ms. Orgeron explained that a dispatcher’s duties require a precise record of all incoming calls, regardless of whether an ambulance is dispatched in response to a 911 call. Ms. Richard and her witnesses on the other hand, testified that they logged an incoming call only if it entailed an ambulance being set to a caller.
Reviewing the testimony before the Commission it is readily apparent there is little certainty about how records are to be kept. At the very least there is much confusion and misunderstanding of record keeping methods, if not a total lack of firm procedures in handling 911 calls.
We have reviewed the audio tape of the call between Mrs. Posterman and Ms. Richard and perceive no sense of urgency in Mrs. Posterman’s voice. Rather, Mrs. Posterman sounds both resigned to and disgusted with her husband’s drinking. Furthermore, not once during the conversation did Mrs. Posterman ask Ms. Richard to send an ambulance. Considering the circumstances of the call and the conflicting testimony on guidelines and procedures or lack thereof, we cannot say that the Commission’s characterization of Ms. Richard’s handling of this call as “capable” and “acceptable” is erroneous. Neither can we say the Commission abused its discretion or acted arbitrarily or capriciously in modifying the action taken against Ms. Richard.
*695 On the other hand the Authority presented evidence to warrant some disciplinary action against Ms. Richard that would justify suspension. Although there was no evidence that Ms. Richard purposely gave Mrs. Posterman an incorrect operator number to confuse her or to evade a follow up call from Mrs. Posterman, nevertheless, giving an incorrect call number does manifest dereliction of duty by someone of Ms. Richard’s position with two and one-half years of experience in the emergency services field.
For the foregoing reasons we affirm the action of the Civil Service Commission modifying Mr. Richard’s termination to a suspension.
AFFIRMED.