KLEES, Judge.
Appellant, the Office of Employment, Training and Development (OETD), appeals a ruling of the Civil Service Commission reinstating appellee, Mrs. Victoria Saulny, to her former position as an administrative analyst III with the OETD. We affirm.
The OETD was charged with the administration of the Federal Job Training Partnership Act (JTPA) in and for the Parish of Orleans. The act established a program whereby unemployed persons would be trained for jobs by firms (subcontractors) who contracted with the OETD to provide this service. Following the training, the subcontractors would seek employment for the trainees. As trainees left the program, a form “706” was used to verify their termination. A numerical code was designated on the form “706” to specify the status of the trainee at termination. The most favorable outcome, designated by code “04”, indicated that the trainee had been employed in a position not subsidized by various job training funds. The least desirable outcome, code “09”, meant the trainee had not been placed in a job position. If the percentage of “09” ’s was too great, there existed the possibility that the funds could be cut and the program awarded to a public entity other than the City of New Orleans. Because the OETD had failed to reach its quota of positive codes for two consecutive years, it was on probation at the time of Mrs. Saulny’s termination in September, 1986.
In May, 1986, Mayor Sidney Barthele-my’s new administration had taken office and had conducted an investigation into the operations of the OETD. As a result of this investigation, Mrs. Saulny was dismissed for dereliction of her duties. Specifically, she was charged with having applied the coding system inaccurately by coding too many trainees in the “09” category rather than the “04” category, thereby jeopardizing the receipt of federal funds. Furthermore, the appointing authority of the OETD claimed that she had failed to properly maintain the files of the monitors whose job it was to insure that the subcontractors accurately reported the status of the trainees.
Mrs. Saulny appealed her dismissal to the Civil Service Commission. After two hearings in January and February, 1987, the Commission modified the discipline imposed by the appointing authority. In lieu of termination, the Commission suspended Mrs. Saulny from September 30, 1986 to May 18, 1987 without back pay and reinstated her to her former position effective May 19, 1987. Mrs. Saulny appealed this decision. After reconsideration, the Commission upheld her appeal and reinstated her to her former position with back pay and emoluments. The OETD appeals this decision.
The law is well settled that the appointing authority bears the burden of showing cause for the disciplinary action imposed. Howard v. Department of Police, 466 So.2d 699 (La.App. 4th Cir.1985). The appointing authority must demonstrate, by a preponderance of the evidence, that the conduct did in fact impair the efficient and orderly operations of the public service. Abadie v. Department of Streets, 480 So.2d 425 (La.App. 4th Cir.1985); Reboul v. Department of Police, 420 So.2d 491 (La.App. 4th Cir.1982); Legett v. Northwestern State College, 242 La. 927, 140 So.2d 5 (1962). The only legal justification for a change in such disciplinary action is that the appointing authority has not met its burden and failed to show sufficient cause. The protection civil service employees receive from La. Const. Art. 10, § 8(A) is only against firing or other discipline without cause. Joseph v. De *146 partment of Health, 389 So.2d 739 (La.App. 4th Cir.1980).
The appointing authority, Joseph Shorter III, Director of OETD, contends that due to Mrs. Saulny’s dereliction of duties, the OETD failed for two consecutive years to meet state and federal standards and was therefore placed on probation. As proof of Mrs. Saulny’s poor job performance, the appointing authority offered 191 cases that had been sampled for accuracy. Of the 191 cases tested, 100 entered in the “09” category concerned trainees who were in fact employed and therefore should have been given a higher status code. Thus, 52.4 percent of the “09” records checked showed that employment had been attained in the unsubsidized sector. The OETD should have received credit for these placements, but did not because the persons involved were improperly coded.
The record indicates that the subcontractors made the initial determination of what code to use on the form “706”. Mrs. Saul-ny, as supervisor of Management Information System, determined the accuracy of the codes through a validation process, which entailed entering a trainee’s social security number into the state computer. Mrs. Saulny then had to determine what status was reflected by the trainee’s actual situation.
Specifically the appointing authority contends that Mrs. Saulny erred by not placing trainees in the “04” category if they had received wages for even one day; by failing to keep trainees in a “hold” category until their employment records could be verified; and by not counting as employment jobs held by trainees when they entered the program. The evidence indicates that under the terms of the contracts between the OETD and subcontractors, trainees had to hold job positions for at least ten days before placement was considered successful. The evidence in the record also establishes that employment records were frequently not available to Mrs. Saulny’s staff when subcontractors’ claims had to be verified. Consequently, Mrs. Saulny had no way of knowing if the trainee was later employed. With regard to jobs held by trainees when they entered the program, the appointing authority's own witnesses stated that employed persons were not eligible for the job training program. Conversely, Mrs. Saulny testified that the appropriate criterion for determining status was not employment vel non but whether an applicant’s income placed him or her above the poverty level. Based on the evidence in the record, we find that the Commission properly concluded that the appointing authority failed to carry its burden of proof.
Lastly, Mrs. Saulny is charged with improper maintenance of central files and monitors’ reports. We find no merit in this claim. Not only did the appointing authority fail to mention this reason for dismissal in Mrs. Saulny’s termination letter, but, at the Civil Service Commission hearings, it failed to prove that Mrs. Saulny was responsible for the maintenance of the files.
The appropriate standard of appellate review of actions by the Civil Service Commission is to determine whether the conclusion reached by the Commission was arbitrary or capricious. Newman v. Department of Fire, 425 So.2d 753 (La.1983). As in other civil matters, deference should be given on appellate review to the factual conclusions of the Commission. Id. In our opinion, the appointing authority failed to prove by a preponderance of the evidence that Mrs. Saulny’s conduct did in fact impair the efficient operation of the OETD’s administration of the JTPA. Likewise, we conclude that the Civil Service Commission’s decision was neither arbitrary nor capricious.
Accordingly, the decision of the Civil Service Commission is upheld.
AFFIRMED.