KLEES, Judge.
Plaintiff, Mr. Morris F.X. Jeff, appeals a decision from the Civil Service Commission upholding his suspension from the New Orleans Recreation Department (NORD). We reverse.
Mr. Jeff, an employee of NORD for 38 years, was employed at the time of his suspension as the Program Chief in charge of all NORD programs, activities, playgrounds and NORD centers. In his capacity as Program Chief, plaintiff served as the Unit Supervisor of the NORD Swim Program. Under plaintiff’s supervision were Mr. Joseph Shannon, Mr. Sherman Davis and Mr. Joseph Gibson. Mr. Shannon supervised NORD’s city wide swim program including the program at the Gert Town Pool. Mr. Davis acted as the pool manager of the Gert Town pool and Mr. Gibson was the head lifeguard.
On April 8, 1985, an employee of the NORD Swim Program filed a complaint with the Office of Municipal Investigation (OMI) alleging discrimination and payroll fraud. Although a subsequent OMI investigation determined the discrimination claim was unfounded, the investigation produced extensive evidence indicating payroll fraud by twenty-three former and present NORD employees. As a result, plaintiff’s supervisors, NORD Director Madlyn Richard and Deputy Director Joseph Peychaud, prepared letters of suspension for all employees involved. The letters of suspension were given to plaintiff as the Unit Supervisor for his signature. After refusing to sign the letters of suspension, plaintiff received a forty-five (45) day suspension for failure to properly supervise *818 payroll activity and failure to follow a departmental directive. Plaintiff appealed the action taken against him to the Civil Service Commission. After a hearing in which plaintiff’s counsel was not present, the Commission upheld plaintiffs suspension. This appeal followed.
The law is well settled that the appointing authority bears the burden of showing cause for the disciplinary action imposed. Howard v. Department of Police, 466 So.2d 699 (La.App. 4th Cir.1985). The appointing authority must demonstrate, by a preponderance of the evidence, that the conduct did in fact impair the efficient and orderly operations of the public service. Saulny v. Office of Employment Training and Development, 524 So.2d 144 (La.App. 4th Cir.1988). The only legal justification for a change in such disciplinary action is that the appointing authority has not met its burden and failed to show sufficient cause. Id.
In the instant matter, plaintiff contends that the appointing authority, NORD, has not satisfied its burden of proof. Particularly, plaintiff contends that NORD has failed to prove that he was the supervisor ultimately responsible for the orderly and correct preparation of the payroll for the NORD Swim Program.
Under NORD’s Positive Payroll Reporting System, employees are to indicate the time in which they report to work, and the time in which they depart on “sign-in” sheets. The hours calculated from the “sign-in” sheets are totaled and affixed to R.A.M.S. cards by a NORD supervisor for payroll purposes. The procedure for the collection of time sheets and compilation of the R.A.M.S. cards with respect to the Gert Town pool involved the following: Mr. Gibson, the head life guard, would monitor the sign-in/sign-out process and compile the time sheets. Mr. Davis, the pool manager, would then prepare the R.A.M.S. cards from the time sheets. The R.A.M.S. cards would then be sent to Mr. Shannon’s office at the NORD headquarters. Mr. Shannon would then verify the correctness of the R.A.M.S. cards relative to thé time sheets, sign his name on appropriate lines marked supervisor and send the R.A.M.S. cards to the payroll clerk of NORD for preparation of employee checks. Following usual procedures, plaintiff would not see these R.A. M.S. cards or time sheets and would not sign them unless Mr. Shannon was absent from his position. It was plaintiff’s responsibility to sign the R.A.M.S. cards for his immediate subordinates such as Mr. Shannon and his office staff.
At the Civil Service Commission hearing, the appointing authority offered the testimony of Deputy Director Peychaud. Pey-chaud testified that the plaintiff was aware of the O.M.I. investigations at the Treme and Gert Town pools and that warning letters were sent to plaintiff. Peychaud referred specifically to letters dated January 4, 1985 and December 12, 1985. The January 4, 1985 letter signed by Director Richard and Peychaud was a warning letter to plaintiff which stated “... you are obligated to make sure that persons under your direct and indirect supervision be aware of and adhere to all NORD, City and Unit policies.” While plaintiff readily admitted receiving other letters from his supervisors, he flatly denied ever receiving the January 4, 1985 letter. Moreover, the appointing authority failed to offer proof that the January 4, 1985 letter was sent certified mail or that the letter was sent on the day stated therein.
Regarding the letter dated December 12, 1985, it states that plaintiff failed to properly monitor the payroll reporting procedures at the Gert Town pool. In this letter, the appointing authority based the claim of plaintiff’s duty on: 1) NORD’s Departmental Policy Memorandum No. 15, and 2) oral orders given by Director Richard to plaintiff ordering him to personally monitor the entries on the R.A.M.S. cards of swimming program personnel assigned to the Gert Town pool. NORD’s Policy Memorandum No. 15 states in pertinent part:
“II. NORD Centers & Swimming Pools.
1. The Center Manager, Pool Manager, Assistant Managers (or employees in charge) at all NORD Centers or Pools must provide a daily nightly ‘sign-in’ sheet for all employees assigned to the *819 center or swimming pool; and for any traveling instructors who come to the center to teach classes or give instructions. ...
2. Center Managers (or employees in charge) at a Center or pool are responsible to insure that the sign-in sheets are signed by each individual, and that the information recorded on the sheet is accurate. ...
4. The Center Manager, Pool Manager (or employee in charge) will use the employee ‘sign-in’ sheets for two (2) prior years, which will be subject to the inspection of the Director, Deputy Director, and Unit Supervisor_
7.a. A ‘payroll monitor’ will be employed by the Center’s Office to inspect and monitor the ‘sign-ini process and inspect attendance at NORD Centers on a regular basis. The monitor shall be furnished a list of all persons assigned to each center, their hours of work, the class schedules of traveling instructors and a copy of the Center weekly schedule. The monitor will be responsible directly to Center Coordinator and will report any and all irregularities to the Center Coordinator. The Center Coordinator shall provide sufficient checks on the monitor’s performance to insure that his or her duties are being correctly and faithfully carried out.
b. A ‘payroll monitor’ will also be employed by the athletic office to be used in like manner for the inspection of swimming pools and stadiums.”
NORD Policy Memorandum No. 15 does not state that plaintiff was required to personally verify the accuracy of the R.A. M.S. cards or the time sheets. It states that the center manager was responsible to insure that sign-in sheets were signed and that the information recorded was accurate. Under Policy Memorandum No. 15, the Unit Supervisor, like the Director and Deputy Director, had the responsibility to inspect the employee sign-in sheets of the center manager and pool managers, which the evidence indicates plaintiff did.
The appointing authority also bases plaintiff’s suspension on his failure to follow a departmental directive. Plaintiff received a letter dated December 31, 1985, that stated plaintiff was suspended for refusing to sign letters prepared by the Director and Deputy Director recommending disciplinary action against employees of the Gert Town Pool. Plaintiff testified at the hearing that he would not sign the letters because he neither agreed with the contents of the letters nor the manner in which they were prepared. Plaintiff also testified that for the period he served as Program Chief he never signed suspension letters. He stated he had authority to recommend a suspension if he felt it was necessary but only the Director or Deputy Director could actually suspend an employee. Although NORD offered no evidence to indicate that its regular operating procedure entailed the Director and Deputy Director to make suspension recommendations and then have them signed by the Unit Supervisor, Deputy Director Peychaud testified that this was the procedure used in the instant matter.
Director Richard did not testify at- the hearing on behalf of the appointing authority. Perhaps her testimony could have verified that she personally gave orders to plaintiff to monitor and accurately report the entries on time sheets and R.A.M.S. cards for all NORD Swim Program employees. Absent her testimony, we do not find that NORD has shown sufficient cause for the action taken against plaintiff.
The appropriate standard of appellate review of actions by the Civil Service Commission is to determine whether the conclusion reached by the Commission was arbitrary or capricious. Newman v. Department of Fire, 425 So.2d 753 (La.1983). As in other civil matters, deference should be given on appellate review to the factual conclusions of the Commission. Id. In our opinion, the appointing authority has not proved by a preponderance of the evidence that the plaintiff’s conduct did in fact impair the efficient operation NORD’s payroll reporting system. This is supported by the Commission’s finding that all NORD Swim Program employees performed the duties for all hours registered on the payroll. *820 Therefore, we conclude that the Civil Service Commission’s decision upholding plaintiffs suspension was arbitrary and should not stand.
Accordingly, the decision of the Civil Service Commission is reversed.
REVERSED.