413 So.2d 920 (1982)
Olivia D. DENT
v.
DEPARTMENT OF CORRECTIONS, LOUISIANA CORRECTIONAL INSTITUTE FOR WOMEN.
No. 14625.
Court of Appeal of Louisiana, First Circuit.
April 13, 1982.
Rehearing Denied May 25, 1982.
Donna W. Lee, Luse & Lee, Baton Rouge, for appellant.
Annette R. Seng, Asst. Atty. Gen., Dept. of Justice, Baton Rouge, for appellee.
Laura Denson Holmes, Civil Service Legal Counsel, Dept. of State Civil Service, Baton Rouge, for George Hamner, Director of the Dept. of State Civil Service.
Before ELLIS, PONDER and SAVOIE, JJ.
SAVOIE, Judge.
This is an appeal from a judgment of the State Civil Service Commission upholding the firing of the appellant, Olivia Dent, from her position as a prison guard. We affirm the judgment.
Prior to September 7, 1979, Ms. Dent was a classified employee under the Civil Service Rules and Regulations, a "Correctional Security Officer II" working at the Louisiana Correctional Institute for Women. On that day, she was given a formal termination letter over the signature of C. Paul Phelps, Secretary of Corrections. The letter stated that her dismissal was to be effective as of the close of business on September 11, 1979. The stated reason for this action was that she had been discovered asleep at her post on August 25, 1979.
Ms. Dent obtained counsel and timely appealed her dismissal, maintaining that it *921 was "without factual basis, discriminatory, and contrary to Civil Service Rules."
By letter of November 2, 1979, a month after Ms. Dent's appeal had been filed, a "Corrected Notice" was served upon her, advising her that she was being dismissed effective November 10, 1979, for having been asleep at her post on August 26th.
It appears that there was only one incident in which the appellant was discovered sleeping. The initial termination letter mistook the date of that incident and so, when the error was discovered, the Department of Corrections chose to treat the earlier notice as completely invalid, pay Ms. Dent's salary for the intervening period (she had not worked for the Department since her suspension on August 28th) and issue a new termination letter referring to the correct date on which the sleeping incident occurred.
No appeal was filed in response to the new termination letter, Ms. Dent's attorney apparently relying on the advice of a staff member at the Civil Service Commission that the appeal already filed would suffice. The Department, however, argued before the Commission that this appeal should be dismissed as moot, since Ms. Dent had been technically reinstated to her position, then fired again, and had taken no appeal from the second firing.
On remarkably similar facts in Washington v. Confederate Memorial Medical Center, 147 So.2d 923 (La.App. 1st Cir. 1962) this court clearly expressed its opposition to the use of misleading procedural gambits to deny a civil service employee's right of appeal:
"It was certainly misleading and confusing to employee to be confronted with two letters of dismissal, each containing the same charges ... We feel that under these circumstances that the appellant was denied her right of appeal". (At page 925)
We congratulate the Civil Service Commission for its faithful adherence to the principal of the Washington case in hearing and deciding this case on its merits.
A public hearing was held in this case in Baton Rouge on December 18, 1980, before a referee appointed by the Commission. At that hearing there was testimony from Ms. Dent's superior and two fellow employees (who had been summoned by the superior for the express purpose of witnessing Ms. Dent sleeping) that in the early morning of the day mentioned, she was observed with her head in her arms, unmoving, at her post in the women's dormitory of the prison. All three testified that Ms. Dent was unaware of their presence in the room until Ms. Dent was touched by the supervisor.
Ms. Dent's only defense was her denial that she was asleep. This was corroborated by another guard, who also was charged with being asleep. Ms. Dent did not deny having her head in her arms or being unaware of the presence of the others when they first entered the room with her.
No evidence was offered that her firing was a discriminatory application of discipline.
The Commission's findings of fact were, as follows:
1. Appellant and Ms. Lesia Frison worked the 11:00 P.M. to 7:00 A.M. shift August 25-26, 1979, on Dorm Control. Appellant's duties included keeping records, opening doors, and watching the halls of the girls' dorm from the control area. Ms. Dorothy Bateman was the shift supervisor on that night.
2. The control area is a semi-circular desk. Appellant was seated on an adjustable-height stool behind the control area.
3. At approximately 2:00 or 3:00 A. M., Ms. Bateman, as part of her rounds, checked the Dorm Control area and spoke with appellant and Ms. Frison. Ms. Bateman stated that another employee, Ms. Hutchinson, had brought fish for all the employees. Ms. Bateman said she would heat some fish for appellant and Ms. Frison and bring it to them.
4. At approximately 4:00 A. M., Ms. Bateman returned to the Dorm control *922 area and observed appellant and Ms. Frison apparently asleep. After observing the women for three or four minutes, Ms. Bateman left to get some people to witness the sleeping. By their own testimony, neither appellant nor Ms. Frison was aware that Ms. Bateman had been in the area looking at them.
5. Ms. Bateman went and got Ms. Wright from the front desk and Ms. Hutchinson from the infirmary, and asked them both to come to the Dorm Control area to witness the sleeping women. When Ms. Wright arrived, appellant appeared to her to be sleeping. Appellant was seated on the stool with her head on her arms and eyes closed. Ms. Wright observed her for approximately 45 seconds, during which time appellant made no movement and did not open her eyes. Ms. Wright watched as Ms. Bateman approached appellant and called her name twice, saying "wake-up, wake-up". Ms. Wright then turned away and did not observe whether or not Ms. Bateman shook appellant. Ms. Hutchinson arrived a couple minutes after Ms. Wright, and observed Ms. Bateman shaking appellant by the shoulder and telling her to wake-up.
Appellant lists four specifications of error:
1. The refusal of the Commission to give Ms. Dent or her witness "any credit".
2. The conclusion of the Commission that Ms. Dent was asleep.
3. The conclusion that being asleep was sufficient cause for her firing.
4. The "fairness and clearness" of the statement of the misconduct causing her dismissal.
We find the applicable law to be, as follows:
"(1) The standards of appellate review of findings of fact in Civil Service Commission cases necessarily must be the same as those which exist with regard to cases arising in the trial courts. The reviewing court should not disturb the factual findings of the trier of fact in the absence of manifest error. Arnold v. New Orleans Police Department, 383 So.2d 810 (La. App. 4 Cir. 1980), writ denied, 385 So.2d 274 (La.1980); Herbert v. Department of Police, 362 So.2d 1190 (La.App. 4 Cir. 1978).
(2) While a person who has gained permanent status in the classified state service may be subjected to disciplinary action, such as dismissal, if the conduct complained of by the appointing authority impairs the efficiency of the public service and bears a real and substantial relation to efficient and orderly operation of the public service in which the employee is engaged, (Leggett v. Northwestern State College, 242 La. 927, 140 So.2d 5 (1962), the burden of proving that the action taken against the disciplined employee was proper and warranted falls on the appointing authority. Shelfo v. LHHRA, Pinecrest State School, 361 So.2d 1268 (La.App. 1 Cir. 1978), writ denied, 364 So.2d 122 (La.1978); Stiles v. Department of Public Safety, Drivers' License Division, 361 So.2d 267 (La.App. 1 Cir. 1978); see also La.Const.1974, Art. 10 & 8." Dept. of Public Safety v. Rigby, 401 So.2d 1017 (La.App. 1st Cir. 1981) at 1018.
Reviewing the fact findings of the Civil Service Commission for manifest error, we find the conclusion that Ms. Dent was asleep is amply supported by credible evidence. Even if Ms. Dent had not been asleep, she was so inattentive as to be unaware of the entry of her supervisor into the room. Her job was to maintain an alert surveillance of prisoner movements and her failure to do so could seriously have endangered her life, the lives of her fellow workers, and the lives of prisoners.
Her inattentiveness was ample cause for dismissal.
The letter of termination clearly stated that the cause was the sleeping incident on the date mentioned. It could not have been described any more clearly or fairly.
The decision of the Commission is upheld.
*923 Appellant is to pay all costs.
AFFIRMED.