COVINGTON, Judge.
This is an appeal from a judgment of the State Civil Service Commission upholding the removal of the appellant Ridgeno Williams, from her position as Account Clerk I at the Guste Homes for the Housing Authority of New Orleans. We affirm the judgment.
Prior to June, 1980, Williams was a classified employee of HANO. By letters dated June 24 and 25,1980, over the signatures of the housing authority manager and the executive director, she was given formal notice of termination effective June 27, 1980. The reasons for this action can be summarized as follows:
1. Her responsibility for a shortage of funds in the amount of $500.
2. Her failure to carry out orders promptly and properly.
3. Her failure to keep accurate records, resulting in reports not being made timely-
4. Her failure to complete specific transactions properly.
5. Her excessive absences and tardiness, affecting the productivity of her work.
6. Her failure to transmit properly the files of transferred tenants.
Williams timely appealed her dismissal, contending that there was no basis for the charges made against her.
A public hearing was held in this case in New Orleans on October 14, 1981, before a referee appointed by the Commission. At the hearing there was testimony from the head of the personnel office of HANO, who testified to the termination letter, and testimony from Ms. Williams’ immediate supervisor, who testified about the unaccounted-for funds for which Williams was responsible (a shortage of $500) and specifically about each of the other charges. Two fellow employees corroborated the supervisor’s testimony concerning the shortage of funds. Ms. Williams’ only defense was that she had not taken the $500. She offered to make good the shortage, but had no explanation for the shortage. She acknowledged the absences and tardiness, and had been counseled by her supervisor concerning them.
The Commission’s findings of fact were, as follows:
1. Appellant was an Account Clerk I on June 17, 1980 and was acting in the capacity of a relief cashier as the Account Clerk II, who is the regular cashier, was not at work that day.
2.' Cashiers at the Guste Home Project collect money from the residents. Also, in this connection, the cashiers have to fill out certain reports and keep daily records.
3. The cashier’s cage at Guste Home consists of two (2) cashier windows. The cashier counters are separated by a wall, but there is one common door to the area. Each cashier has a key to their respective cash drawer.
4. At the end of each working day, cashiers are required to count the money in their respective cash drawers. The cashiers run a tape of the contents of the drawer and by tallying their copies of the receipts, the cash taken in should total the receipts given out.
5. The cash drawer money is then put in an envelope, dated and signed by the cashier and sealed. This envelope along with the tape is then deposited in the safe for the night. If there is any discrepancy in the totals, the cashier is to report it to the Manager or to the Administrative Assistant.
6. After the cashiers count their money, the manager or the Administrative As *1312 sistant then double checks the figures by recounting the cash drawer money.
7. On June 17, 1980, appellant was serving as a relief cashier at one window and Arnold Martin, the Administrative Assistant was acting cashier in the other window.
8. Late that afternoon, while appellant was counting the money for the day, a tenant came in to sign a lease. Mr. Martin instructed appellant to leave her window and go out and assist the tenant.
9. Appellant left the cashier’s cage to comply with Mr. Martin’s request. She does not remember if she locked her cash drawer.
10. When she returned it was almost 5:00 p.m., (quitting time), so she proceeded to finish counting her money; however, due to the lateness of the hour, she did not finish her count but rather put the money in an envelope, sealed it and put her name on it. No tallying tape accompanied the envelope.
11. Mr. Martin did not double cheek appellant that day as he did not have time. Ms. Norris did not double check appellant that day as she was called to a meeting earlier that afternoon and never returned to the office.
12. The next day, June 18, 1980, when the safe was opened in order to make a deposit of the contents, Ms. Norris discovered that the amount marked on the outside of appellant’s envelope did not total the actual cash inside the envelope and that the adding machine tape was not in the envelope.
13. Ms. Norris called appellant, who was absent from work on June 18, 1980 and questioned her about the discrepancy. When she contacted appellant by telephone, appellant stated that she was aware of the discrepancy and that she had thrown the adding machine tape away. Ms. Norris also testified that appellant agreed to replace the $500.00, as is the policy whenever a shortage of money from the cashier’s drawer is discovered. Norris further testified that appellant stated she did not know why she didn’t report the discrepancy to any one.
Appellant testified that when Ms. Norris called her about the shortage, she told Norris that she did not know she was short and that is why she did not report the discrepancy. No other explanation for the $500.00 shortage was offered by appellant. In this regard, the Commission finds the testimony of Ms. Norris to be more credible than that of appellant.
14. The testimony of Ms. Norris is un-contradicted in that appellant failed to maintain accurate move in — move out records on several occasions. Since these records were not properly maintained, other forms and reports dealing with the tenants’ move in — move out records were also backlogged. Appellant offered no testimony to rebut this charge and therefore, the Commission concludes that the charge is true.
15. The testimony of Ms. Norris is un-contradicted in that appellant failed to complete certain transactions in connection with re-examination and EDP data on new tenants. If these forms are not in proper form, a new tenant could be charged more or less money for an apartment than was actually necessary. Appellant offered no testimony to rebut this charge and therefore, the Commission concludes that the charge is true.
16. Ms. Norris had to counsel appellant on numerous occasions with respect to her tardiness and previous warnings were given. However, appellant finally corrected her tardiness problem.
17. The testimony of Ms. Norris is un-contradicted in that appellant failed to send certain transferred tenants’ folders to the Magnolia Housing Project when some tenants transferred from the Guste Project to the Magnolia Project causing delays in the processing of said tenants. Appellant offered no testimony to rebut the charge. Therefore, the Commission concludes that this charge is true.
Our scope of review of the Commission’s decision extends to both the law and the facts. La. Const. Art. 10, § 12 (1974). The scope of review in such cases is the *1313 same as that in any other civil case. The findings of fact made by the Commission must be accorded much weight and will not be overturned in the absence of manifest error. Brook v. Louisiana State University, Baton Rouge Campus, 405 So.2d 1216 (La.App. 1st Cir.1981).
In the instant case the Commission found as facts that appellant was responsible for a $500 shortage on June 17, 1980; that she failed to maintain accurate move in — move out records on several occasions, causing other forms and reports to backlog; that she failed to complete certain transactions in connection with re-examination and other pertinent data on new tenants. If these forms are not handled properly, a new tenant could be charged the incorrect amount of rental for his apartment. In substance, the Commission found that appellant’s work performance was unsatisfactory in that she failed or excessively delayed carrying out orders and made serious mistakes through her carelessness, all in violation of the HANO Personnel Policy and Procedure Manual. These facts áre supported by sufficient and competent evidence and, as a matter of law, the facts justify the action taken by the appointing authority. Stiles v. Department of Public Safety Drivers’ License Division, 361 So.2d 267 (La.App. 1st Cir.1978).
A permanent classified civil service employee may be dismissed for cause if the conduct complained of impairs the efficiency of public service and bears a real and substantial relation to the efficient and orderly operation of the public service in which the employee is engaged. Thornton v. DHHR, 394 So.2d 1269 (La.App. 1st Cir.1981).
Williams’ failure to satisfactorily account for the significant shortage on June 17,1980, was sufficient cause for her termination. Her conduct on this occasion impaired the efficiency of the public service and bore a real and substantial relation to the efficient and orderly operation of HANO. The letter of termination fully apprised Williams of the cause for her removal, particularly with regard to the shortage incident. We consider the cause for her dismissal to have been clearly and fairly stated and proven by a preponderance of the evidence. We have carefully reviewed the fact findings of the Commission and find its conclusions, discussed above, to be amply supported by credible evidence.
We thus hold that the appointing authority sustained its burden of proving that the action taken against Ms. Williams was proper and warranted under the circumstances. Shelfo v. LHHRA, Pinecrest State School, 361 So.2d 1268 (La.App. 1st Cir.1978), writ denied 364 So.2d 122 (La.1978). Therefore, the decision of the Commission is upheld. We affirm its judgment. Appellant is cast for all costs.
AFFIRMED.