ALFORD, Judge.
This is an appeal from a decision of the Civil Service Commission affirming the ter-minatioii of appellant, Albertha Alexander, *723 from her position as a Louisiana Practical Nurse, III.
Appellant was employed at the New Orleans Health and Rehabilitation Center, a home for geriatric patients, working the 11:00 p.m. to 7:00 a.m. shift. She was notified by letter dated February 21, 1983, that she was being terminated from her position February 22, 1983. The letter detailed the following reasons for appellant’s termination:
1. Displaying poor nursing skills which resulted in patient neglect.
2. Failure to record pertinent patient information in patient’s charts and failure to prepare incident reports.
3. Verbal threats to a patient.
4. Displaying poor supervisory skills.
These charges were denied by appellant, and she appealed to the Civil Service Commission. On July 11, 1983, a hearing was held before a referee, and on October 28, 1983, the referee rendered a decision denying appellant’s appeal. Appellant then filed an application for review by the Civil Service Commission which was denied. From the Commission’s decision, appellant appeals. We affirm.
Appellant initially contends that the referee erred in refusing to grant a partial summary disposition. At the hearing, appellant moved for a summary disposition, contending that a certain paragraph in the termination letter was vague. The paragraph complained of stated that some of the employees who worked on appellant’s shift were reporting to work late. The letter further stated that appellant was in charge of these employees and that she failed to take disciplinary action or to report the tardy employees to her supervisor.
The referee denied the motion for summary disposition, finding that the paragraph in question complied with Civil Service Rule 12.3(c).[1] After a careful review of the termination letter, we find that the paragraph complained of by appellant was sufficient to apprise her of the charge against her and to enable her to adequately prepare a defense to the charge. University of New Orleans v. Pepitune, 460 So.2d 1191 (La.App. 1st Cir.1984), writ denied, 464 So.2d 315 (La.1985).
In appellant’s other assignments of error, she contends that the referee erred in affirming her termination.
Disciplinary action against a classified employee must be based on legal cause. Legal cause for disciplinary action against a classified employee has been defined as conduct which impairs the efficiency of the public service and which bears a real and substantial relation to efficiency and orderly operation of the public service in which the employee is engaged. Dent v. Department of Corrections, Louisiana Correctional Institute for Women, 413 So.2d 920 (La.App. 1st Cir.1982). The totality of individual lesser offenses or even a single particularly aggravated incident have all been found to constitute legal cause for dismissal. Ryder v. Department of Health and Human Resources, 400 So.2d 1123 (La.App. 1st Cir.1981).
It is of the utmost importance that patients receive proper health care. This is especially true for geriatric patients, who as a whole, have fragile health. It is imperative that civil service nurses provide this care in the most efficient means possible as provided by established rules. At the hearing, appellant explained her actions in many of the instances. However, the record reflects that she was establishing a trend of inconsistent and inefficient work habits in caring for her patients.
The standard of review in the present case is the same standard used in reviewing decision from the district courts; factual determinations of a referee or the commission will not be set aside unless they *724 are shown to be clearly wrong. Howard v. Housing Authority of New Orleans, 457 So.2d 834 (La.App. 1st Cir.1984). The referee held that some of the charges against appellant were proved and that appellant had impaired the efficiency of the service.
After the hearing the referee made the following findings of fact and conclusions, which provide in pertinent part:
FINDINGS OF FACT
A. DISPLAYING POOR NURSING SKILLS WHICH RESULTED IN PATIENT NEGLECT
1. Appellant has been a licensed practical nurse since 1978. Appellant graduated from the Orleans Area Vocational Technical School and received her license in 1976.
* * * * * *
3. One of appellant’s responsibilities is to chart the activity involving patients assigned to appellant’s unit during appellant’s shift.
s*s .⅜ s*c * ⅞: *
6. On December 29, 1982, appellant was responsible for patient # 763.
7. The nurses notes on patient # 763 for the 3:00 p.m. to 11:00 p.m. shift reflected that this patient had fallen out of bed.
8. Appellant testified that on her shift (the 11:00 p.m. to 7:00 a.m. shift) patient #763 complained of leg pain; after midnight an aide went to turn patient # 763 over; and that the aide then discovered that the patient was bruised worse than appellant had first thought.
9. Ms. Marlene Boyd, appellant’s supervisor testified that appellant had not properly charted the activities relating to patient #763. Ms. Boyd testified that appellant’s primary duty when she came on shift was to review the nurses notes or the 24 hour census sheet to determine what treatment patient #763 should be administered or what complaints to monitor. Ms. Boyd, also testified that appellant should have contacted a doctor concerning patient # 763’s condition. Appellant did not contact a physician.
10. Appellant did not know that patient #763 had fallen until the morning of her shift which began at 11:00 p.m. on December 29, 1982. There was no testimony indicating that appellant had charted that the patient had complained of pain prior to midnight on December 29, 1982. Willie Mae Gibson, LPN III, works the 7:00 a.m. to 3:00 p.m. shift. When Ms. Gibson came on duty at 7:00 A.M. on December 30, 1983 (sic), she received information that patient #763 had complained of severe leg pain. The nurses notes for the prior shift, 11:00 p.m. to 7:00 a.m., did not indicate that a doctor had been called'. Appellant and Ms. Gibson checked patient #763 together and thereafter Ms. Gibson called a doctor.
11. On January 14, 1983, patient # 280 reported to appellant that she had fallen and hurt her thumb. Appellant testified that she learned of this incident at 5:00 a.m.
12. Appellant observed the patient’s thumb as compared with the patient’s other thumb and appellant saw no difference in the two. Appellant did not diagnose the thumb as being broken nor did appellant notice any swolling (sic), as the nurse on the 7:00 a.m. to 3:00 p.m. shift did when she came on duty after appellant. However, the nurses notes reflect that appellant did notice some swelling but did not contact a physician.
13. Appellant did not complete an incident report as she should have on patient # 280. Incident reports should be completed by a nurse on duty when, as in the case of patient # 280, a patient falls out of bed.
14. Appellant did not complete the incident report until her regular shift the following day.
* * * * * ⅜
16. When Ms. Gibson came on duty, patient # 280’s thumb was obviously hurt. The patient’s thumb was bruised and swollen. Ms. Gibson called the doc *725 tor and patient # 280 was sent to the hospital during Ms. Gibson’s shift.
[[Image here]]
19. There was no testimony indicating what had happened to patient # 838 on appellant's shift. Ms. Gibson did not make out an incident report on this patient because the injury to the patient had occurred on appellant’s shift. Ms. Gibson did testify that under the circumstances appellant should have made out an incident report and when Ms. Gibson came on duty she asked appellant to do so.
* * * * * *
23. Appellant first testified that on February 4, 1983, at 6:58 a.m., she charted that patient # 679 began having chest pains at 5:00 a.m. and that the patient had told appellant that at 5:00 a.m. she [patient # 679] had taken two nitro tablets which the patient keeps at her bedside. Appellant then testified that at about 5:30 a.m., she learned that the patient had taken two nitro tablets.
24. Ms. Gibson testified that when she came on duty on February 4, 1983, she learned that patient #679 had complained of chest pains since 5:00 a.m. Ms. Gibson told appellant to call a doctor regarding this patient but Ms. Gibson did not know whether appellant had phoned the doctor during her shift. Appellant had not telephoned a doctor regarding patient # 679 on her shift on February 4, 1983.[2]
* * * * * #
B.FAILURE TO RECORD PERTINENT INFORMATION IN PATIENT’S CHARTS, AND FAILURE TO PREPARE INCIDENT REPORTS.
1.Appellant admitted the charge contained in paragraph 2(a) of the letter of termination.[3]
2. Patient # 717 suffered a seizure during the 7:00 a.m. to 3:00 p.m. shift on December 2, 1982. This information was documented in the nurses notes for patient #717 on the 7:00 a.m. to 3:00 p.m. shift.
3. Appellant testified that every two hours she did chart the vital signs of patient #717 in the nurses notes. In the nurses notes produced at the hearing there was no record that appellant had documented patient’s #717 condition during the 11:00 p.m. to 7:00 a.m. shift.
4. Appellant did not make out an incident report on the injury that occurred to patient #280 until the following day. The incident report should have been prepared by appellant the day of the incident.
5. On the 11:00 p.m. to 7:00 a.m. shift which began on January 14, 1983, appellant did chart that patient # 280 had fallen and hurt her thumb, and that a “plan of care [was] in effect”.
C.VERBAL THREATS TO A PATIENT
1.Appellant testified that she did not threaten patient # 280, nor did she tell the patient that she would be transferred to the red unit. Appellant’s testimony was uncontradicted.
D.DISPLAYING POOR SUPERVISORY SKILLS
1. Prior to the meeting held on January 12,1983, appellant was aware that several employees on the 11:00 p.m. to 7:00 a.m. shift were reporting late to work.
2. Appellant testified that when she attempted to discuss the problem with Ms. Boyd, Ms. Boyd told appellant that she did not want to hear it.
3. Ms. Boyd testified that appellant never tried to advise her of the tardiness of *726 employees on the 11:00 p.m. to 7:00 a.m. shift.
[[Image here]]
CONCLUSIONS OF LAW
The Referee finds that the appointing authority has sustained the burden of proving some of the charges against appellant. Appellant’s failure to chart in some occasions and to properly chart on other occasions the activities relating to patients under her care impaired the efficiency of the service. Appellant’s failure to chart properly also prevented proper treatment from being administered to patients by nurses who treated those patients after appellant.
Accordingly, the appeal is denied.
Additionally, in March of 1982, Lua Hebert, Assistant Director of Nursing Services, sent a memorandum to all nurses. The memorandum, which was entered into evidence, stated that any change in a patient’s condition must be immediately reported to the patient’s physician, unless the physician was already aware of the change.
After a thorough and independent review of the record and of appellant’s nineteen assignments of error, we conclude that the referee’s decision was not clearly wrong.
Therefore, for the foregoing reasons, we affirm the decision of the Civil Service Commission denying Ms. Alexander’s appeal. Costs of this appeal are to be paid by appellant, Albertha Alexander.
AFFIRMED.

. Civil Service Rule 12.3(c) provides in pertinent part that the appointing authority or his authorized agent:
Shall furnish to the employee at the time such action is taken or prior thereto, a statement, in writing, giving detailed reasons for such action. The appointing authority shall furnish the director a copy of said statement within fifteen (15) calendar days of the date employee was notified.

. We note that appellant did call the doctor at 7:20 A.M.

. Paragraph 2(a) of the termination letter provides:
On November 29, 1982, you recorded on the twenty-four (24) hour census sheet that a patient (Chart # 250) was bleeding from the rectum. You failed to document this in the patient’s chart until it was pointed out to you.