558 So.2d 617 (1990)
F. LeRoy ENNIS
v.
DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, DIXON CORRECTIONAL INSTITUTE.
No. CA 89 0033.
Court of Appeal of Louisiana, First Circuit.
February 21, 1990.
*618 Darrell D. Cvitanovich, Baton Rouge, for appellant.
Adair D. Jones, Asst. Atty. Gen., Dept. of Justice, Corrections Section, Baton Rouge, for appellee.
Robert R. Boland, Jr., Civil Service Legal Counsel, Baton Rouge, for Herbert L. Sumrall, Director, Dept. of State Civil Service.
Before COVINGTON, C.J., and WATKINS and SHORTESS, JJ.
COVINGTON, Chief Judge.
This is an appeal to review the order of the State Civil Services Commission upholding the decision of the Referee to reinstate the appellant, F. LeRoy Ennis, without back pay, in his position as a Corrections Sergeant with the Department of Public Safety and Corrections at Dixon Correctional Institute. The decision also ordered the January 15, 1988, notice of termination to be expunged from Ennis' personnel records and awarded attorney's fees.
Ennis, a Corrections Sergeant with permanent status, was notified by letter of the Secretary of the Department dated January 15, 1988, confirming the employee's verbal suspension of January 6, 1988, and terminating him from his position at Dixon Correctional Institute, effective January 20, 1988.
As cause of Ennis' termination, the Secretary's letter charged the employee with failure to report to the office of the Chief of Security on January 4, 1988, to turn in his key to his assigned room at the Bachelor Officers' Quarters (BOQ) at the institute, pursuant to a direct order issued on December 27, 1987, and with failure to obey a direct order issued on January 6, 1988, at 3:00 p.m., by the Assistant Warden to sign a medical release form so that Ennis' medical excuse could be verified.
The Secretary notified the employee: "By your actions, you violated Corrections Service Employee Rules and Disciplinary Procedures # 7 which requires that employees must obey direct written and verbal orders in a cooperative and prompt manner."
Thereupon, the employee filed a request for appeal of the appointing authority's letter of termination, seeking reinstatement in his position with back pay, expungement of the notice of termination from his record and attorney's fees.
Thereafter a public hearing was held before the duly appointed Referee, who rendered the order of which Ennis applied for review to the State Civil Service Commission on the issue of denial of back pay. The appointing authority sought review of the Referee's decision.
After consideration of the application for review, the State Civil Service Commission made the decision of the Referee the final decision of the Commission.
On appeal, Ennis asserts the Referee erred "as a conclusion of law and as a conclusion of fact in ordering F. LeRoy Ennis reinstated without back pay because he was not without fault in this matter."
On this issue the Referee concluded that the employee was to be reinstated without back pay because he was "not without fault in this matter, in that he failed to follow procedure by providing a medical excuse upon return to duty on December 30, 1987, and after having been put on notice on January 6, 1988, that his employer wanted more complete medical information regarding his most recent absence, he did nothing to attempt to obtain the required information and to submit it to his employer." The Referee relied upon the case of Beverly v. Sewerage and Water Board, 519 So.2d 172 (La.App. 4 Cir.1987), as her authority for denial of back pay to the employee.
In Beverly the Commission determined that both parties (employer and employee) were at fault, so the employee was ordered to be reinstated without back pay, remarking: *619 "Both parties seem to have moved quickly to a hasty confrontation. Both should therefore share in this disciplinary action."
On appeal, in Beverly, the issue of "back pay" was the only issue before the court. The appeal court affirmed the decision of the Commission, stating:
The appellants cite several cases which hold that an illegally dismissed employee who is subsequently reinstated is entitled to reinstatement with back pay. However, the Civil Service Commission in this case ruled that both the appellants and the Sewerage & Water Board were at fault in the incident which led to the subsequent dismissal of the appellants. Therefore, the appellants in this case are distinguishable from the illegally dismissed employees described in the above-mentioned jurisprudence[1] and are not entitled to pay.
Beverly, 519 So.2d 173-174.
The Louisiana Legislature has addressed this set of circumstances in La.R.S. 49:113, which provides:
Salaries and wages of employees illegally separated; off-set of wages earned in outside employment
Employees in the state or city civil service, who have been illegally discharged from their employment, as found by the appellate courts, shall be entitled to be paid by the employing agency all salaries and wages withheld during the period of illegal separation, against which amount shall be credited and set-off all wages and salaries earned by the employee in private employment in the period of separation.
We find no language in Section 113 which intimates that where the civil service employee is somewhat at fault, he shall forfeit his entitlement under the provision to "all salaries and wages withheld during the period of illegal separation." The rationale of Beverly is unconvincing. We choose not to follow that decision.
While a person who has gained permanent status in the classified state service may be subjected to disciplinary action, such as termination, if the conduct complained of by the appointing authority impairs the efficiency of the public service and bears a real and substantial relation to efficient and orderly operation of the public service in which the employee is engaged, Leggett v. Northwestern State College, 242 La. 927, 140 So.2d 5 (1962), the burden of proving that the action taken against the employee was proper and warranted falls on the appointing authority. Shelfo v. LHHRA, Pinecrest State School, 361 So.2d 1268 (La.App. 1 Cir.1978), writ denied, 364 So.2d 122 (La.1978). We find, as did the Referee and Commission, that the appointing authority failed to carry its burden of proof that a legal cause existed for the disciplinary action taken against Ennis. See Decision of Referee, attached as Appendix A.
Our review of the record herein convinces us that Ennis was not terminated for legal cause. We are also convinced that the law does not authorize the forfeiture of back pay under the circumstances of this termination.
Accordingly, we amend the decisions of the Referee and Commission and order that F. LeRoy Ennis be reinstated with back pay, subject to set off. In all other respects the decisions are affirmed. Costs of appeal are fixed at $831.00 and cast against the appointing authority.
Amended, and as Amended, Affirmed.
APPENDIX A

DECISION

In Re: Appeal of F. LeRoy Ennis

(Department of Public Safety and Corrections, Dixon Correctional Institute)

State of Louisiana

Civil Service Commission

Docket No. 6992

Filed June 13, 1988

STATEMENT OF THE APPEAL
Appellant was employed by the Department of Public Safety and Corrections, at *620 Dixon Correctional Institute, as a Corrections Sergeant and was serving with permanent status.
By letter dated January 15, 1988, over the signature of C. Paul Phelps, Secretary, appellant was advised that his verbal suspension of January 6, 1988 was confirmed and that he was being terminated effective January 20, 1988. As cause for these actions, appellant is charged with failing to obey a direct order issued by the Chief of Security on December 27, 1987, to report to his office on January 4, 1988, to turn in the key to appellant's room in the Bachelor Officers' Quarters (BOQ); and with failing to obey a direct order issued by Assistant Warden Kelly Ward on January 6, 1988, to sign a "release form" so that officials of the Institution could contact appellant's physician and verify his excuse for his absences from duty on December 17 through 29, 1987. The letter states that appellant violated Corrections Services Employee Rules and Disciplinary Procedures # 7. In support of the severity of the action, the letter cites an October 23, 1986 reduction in pay (in lieu of a ten-day suspension) for failing to remain alert and perform his duties in an attentive manner.
On February 8, 1988, appellant in proper person filed a request for appeal wherein he complains of his termination, denies the charges against him and alleges that he was "verbally fired" by Warden Burl Cain on Wednesday, January 30, 1987, for sick leave abuse. As relief, appellant seeks reinstatement with back pay, expungement of his record and legal fees.
A public hearing was held in Baton Rouge on May 3, 1988, before a Referee appointed by the Commission. Based upon the evidence presented at the hearing and pursuant to Article X, Section 12(A) of the Louisiana Constitution, the Referee makes the following findings.

FINDINGS OF FACT
1. Appellant was assigned to the C Team which worked on a rotating schedule of days from 6:00 p.m. to 6:00 a.m.
2. Appellant worked December 17, 1987; December 18, 19 and 20, 1987 were regularly scheduled days off for C Team; appellant called in sick on December 21 and 22, 1987; December 23 and 24, 1987 were regularly scheduled days off for C Team; appellant called in sick on December 25, 26 and 27, 1987; December 28 and 29, 1987 were regularly scheduled days off for C Team; appellant reported for roll call on December 30, 1987; thereafter, appellant did not return to the Institution until January 6, 1988.
3. Colonel Donald McNeal, Chief of Security, did not give appellant a direct order on Sunday, December 27, 1987, as charged.
4. By memorandum dated December 28, 1987, Warden Burl Cain issued notice to all employees at the Institution that because of excessive absenteeism, in the future, the Warden would recommend removal under Civil Service Rule 12.10 for any employee who exhausted both sick and compensatory leave. This was a change in policy in that previously, removal was not recommended until an employee exhausted all categories of leave.
Warden Cain had a copy of the memorandum attached to each pay check issued December 30, 1987, and addressed each shift at roll call regarding the memorandum and other issues regarding what he considered to be abuse of sick leave.
5. Appellant testified that he was ill and went to Dr. Robert Hall in Baton Rouge on December 17, 1987; that Dr. Hall diagnosed him as having pneumonia and gave him a medical excuse, on that date, stating that he was incapacitated from December 17, 1987 to December 28, 1987, and could return to work on December 29, 1987; that because he did not see the doctor until approximately 4:00 p.m. and did not have time to call-in prior to 4:45 p.m. as required by the Institution, he reported to work as scheduled that evening; and that when relieved at 6:00 a.m., December 18, 1987, he drove to his home in Monroe and remained there recuperating until December 30, 1987.
6. On December 30, 1987, at approximately 4:00 p.m., appellant came to the *621 Institution to pick up his pay check and found Warden Cain's memorandum with the check. Appellant talked with Kelly Ward, Deputy Warden, who asked if he planned to work that evening; appellant, initially, told Warden Ward that he did not because he had pneumonia. Warden Ward advised appellant that he was close to exhausting his sick leave and that he would need documentation of the illness and certification of his ability to return to work in order to return to work. Appellant said that he did not have his doctor's release but that he would go to Clinton and try to get a release to return to work from Dr. Piker.
7. Appellant testified that on December 30, 1987, he left the excuse from Dr. Hall in his briefcase which he forgot in Monroe; that after speaking with Warden Ward, he called Dr. Hall's office but got no answer; that he went to Clinton to see if Dr. Piker, whom he had seen in the past, could certify him to return to work but found Dr. Piker's office closed; and that he then went to the office of Dr. Pounds, Dr. Piker's associate, who had also treated him in the past, but Dr. Pounds was not in.
8. Appellant reported to roll call at 5:45 p.m., December 30, 1987, with no doctor's excuse. Warden Cain was at roll call to address the shift regarding his December 28, 1987 memorandum; Deputy Warden Ward and Colonel McNeal were also present.
9. Warden Cain addressed the shift; he talked about serious concerns that certain employees were abusing leave and about not having anyone living in the BOQ who does not come to work. Warden Cain stated that a certain person better have his doctor's excuse with him or he was going to be terminated; at the conclusion of his remarks, the Warden said he wanted to see appellant after roll call.
10. After roll call, appellant and the Warden, Deputy Warden and Chief of Security went into the Visitors' Room. Warden Ward asked appellant if he had his doctor's excuse; appellant said that he had left the excuse in Monroe and, as Deputy Warden Ward understood, that his doctor was in Monroe. No further questions regarding the doctor or the excuse were asked; Warden Ward told appellant that he had to have the excuse to come back to work and told appellant that he had abused his leave and run out of leave and was in danger of being removed. Appellant denies that he told Warden Ward that his doctor was in Monroe.
11. Warden Cain told appellant that if he did not start coming to work, he "was going to get fired." Thereafter, Warden Cain told appellant, "I'll let you resign and keep all this off your record;" and Warden Ward offered to go open the Personnel Office, find a resignation form and let appellant resign that night. At some point during the conversations, appellant was told that he was not going to be allowed to work that night and Colonel McNeal told him to bring the key to his room in the BOQ to the Colonel's office "on the following Monday."
12. Wardens Cain and Ward, Colonel McNeal and appellant all left the Visitors' Room in the Gym. As Warden Cain got to his car, appellant approached and asked if he was to move out of the BOQ right away; Warden Cain responded, "I don't care if you move out right now; do whatever you want to do." Appellant left the Institution that evening believing that he had been "fired."
13. Appellant did not report to Colonel McNeal on Monday, January 4, 1988.
14. Between December 30, 1987 and January 6, 1988, paperwork had been completed at the Institution, and forwarded to Corrections Headquarters in Baton Rouge, recommending appellant's removal under the provisions of Civil Service Rule 12.10. No evidence was presented to establish that appellant had been given notice of this recommended action. Apparently because of this recommendation, no action was taken regarding appellant's failure to have a doctor's excuse on December 30, 1987, his failure to work on December 30, 1987, or his failure to report for duty as scheduled on December 31, 1987, January 4, 1988 and January 5, 1988, all of which conduct was *622 in violation of the Institution's and the Department's rules and procedures.
15. On Wednesday, January 6, 1988, appellant came to the Personnel Office, with his badge and uniforms, to "process out;" appellant advised the personnel technician that he had been "fired" by Warden Cain. When contacted by the Personnel Office, Deputy Warden Ward instructed that appellant be sent to his office.
16. Warden Ward advised appellant that he had not been "fired" but that there were questions regarding appellant's absence beginning December 18, 1987.
17. After reviewing the return to work form which appellant had with him on January 6, 1988, and which was issued by Dr. Robert J. Hall of Baton Rouge, indicating that appellant had been incapacitated from December 17, 1987 to December 28, 1987 and could return to work on December 29, 1987, Warden Ward contacted the Personnel Office at Corrections Headquarters in Baton Rouge. Warden Ward spoke with Mary Virginia Lancaster, a personnel officer, to whom he expressed concerns about the various doctors whom appellant had indicated were treating him, the lack of information on Dr. Hall's slip and his doubts about appellant's leave usage. Ms. Lancaster advised Warden Ward that she had consulted Joe Copsa, a Corrections attorney, and that the Warden could order appellant to sign a medical release authorizing his doctor to provide more information.
18. Warden Ward drafted a letter to Dr. Hall for appellant's signature and had the letter typed. The letter, prepared on Dixon Correctional Institute letterhead, states:
"Dear Doctor Hall:
This is to request your cooperation in the release of my medical records as it applies to a recent illness of December 17, thru December 29, 1987, to the authorities of Dixon Correctional Institute, Jackson, Louisiana.
I am also giving my permission for you to discus [sic] with the authorities of that institution, my medical problems."
19. Warden Ward, in the presence of Colonel McNeal, instructed appellant to sign the letter because "they wanted to talk to the doctor about [appellant's] medical history." Appellant refused to sign the letter because, as he stated at that time, he believed the relationship between a doctor and a patient was privileged. Warden Ward did not ask appellant about his specific objections to signing the release letter nor did he advise appellant that the inquiry was to be of limited scope as to appellant's most recent cause for absence.
20. On January 6 or 7, 1988, appellant was issued two disciplinary reports (Forms DR-1). The first by Colonel McNeal, dated January 5, 1988, cites the date and time of the incident as "12/28/87-6:00 p.m.," and describes the incident as "on 12/27/87, you were ordered to report to my office on 1/4/88 to turn in your key to the B.O.Q. in which you lived.... Because you did not obey the order given to you, to report to my office, you are being charged with Rule # 7, Failure to follow orders, aggravated." The second by Deputy Warden Ward, dated January 7, 1988, cites the incident of January 6, 1988 wherein appellant refused a direct order to sign a "release form" and indicates that appellant refused to cooperate in the Institution's investigation of abuse of leave policy and apparent conflicting and untrue statements as to appellant's inability to return to work on December 30, 1987.
21. On January 7, 1988, appellant submitted prepared statements in response to each of the DR-1's. In his response to the DR-1 issued by Colonel McNeal, appellant states that Warden Ward told him that Colonel McNeal gave a direct order on December 30, 1987; denies that Colonel McNeal gave him a direct order "to see him on Monday or any other day;" and avers that Warden Cain told him that he was fired. In his response to the DR-1 issued by Warden Ward, appellant states that he was ordered to sign an "Authorization of Medical History Release;" urges the Doctor-Patient Privilege; and denies that he intended any insubordination.
*623 22. No evidence was presented to establish that any further investigation was conducted or that any consideration was given to appellant's responses to the allegations upon which his termination was based.
23. By letter dated October 23, 1986, appellant's pay was reduced, in lieu of a ten 12-hour day suspension. The action was appealed to the Commission (Docket No. 6099) and was dismissed by opinion dated July 6, 1987.

CONCLUSIONS OF LAW
In the appeal of a disciplinary action, the burden of proof as to the facts is on the appointing authority. La. Const. Art. X, Sec. 8(A); Shelfo v. Louisiana Health and Human Resources Administration, 361 So.2d 1268 (La.App. 1st Cir.1978); Stiles v. Department of Public Safety, 361 So.2d 267 (La.App. 1st Cir.1978); Department of Public Safety v. Rigby, 401 So.2d 1017 (La.App. 1st Cir.1981); Dent v. Department of Corrections, 413 So.2d 920 (La. App. 1st Cir.1982). The burden of proof is by a preponderance of evidence, which means evidence of greater weight or more convincing than that offered in opposition thereto. Savoie v. Department of Corrections, 394 So.2d 1285 (La.App. 1st Cir. 1981); Herbert v. Department of Police, 362 So.2d 1190 (La.App. 4th Cir.1978); Jones v. Department of Health and Human Resources, 430 So.2d 1203 (La.App. 1st Cir.1983); Thornton v. Department of Health and Human Resources, 394 So.2d 1269 (La.App. 1st Cir.1981). The appointing authority must establish by a preponderance of evidence that legal cause exists for the disciplinary action imposed. See La. Const. Art. X, Sec. 8(A); Leggett v. Northwest [Northwestern] State College, 242 La. 927, 140 So.2d 5 (1962); Jones v. Department of Health and Human Resources, supra; Williams v. Housing Authority of New Orleans, 435 [425] So.2d 1310 (La.App. 1st Cir.1983); Dent v. Department of Corrections, supra.
The action at issue in this appeal is based upon two incidents. The first incident is alleged to be appellant's failure on Monday, January 4, 1988, to obey a direct order given by Colonel McNeal on December 27, 1987, to report to the Colonel's office on January 4, 1988, and turn in the key to his room in the BOQ; appellant has steadfastly denied that any such order was given and, more specifically, has denied that any order was given on Sunday, December 27, 1987. The evidence presented at the hearing clearly establishes that appellant was not at the Institution on Sunday, December 27, 1987, and that he was given no order on that date[1]; however, evidence was introduced which indicates that on Wednesday, December 30, 1987, Colonel McNeal told appellant to bring his key to the BOQ to the Colonel "on the following Monday," which would have been January 4, 1988. Therefore, whether or not the charge that appellant failed to report to Colonel McNeal's office on January 4, 1988, constitutes cause for disciplinary action is dependent upon whether an order was conveyed to appellant in a manner which would have been recognized by appellant as a direct order and, if so, whether appellant's failure to obey the order impaired the public service. See Department of Corrections v. Murray, 439 So.2d 484 (La.App. 1st Cir.1983).
In light of the obvious confusion created in appellant's mind on the evening of December 30, 1987, by the statements of the Warden, Deputy Warden and Chief of Security which resulted in appellant's belief that he had been verbally "fired"; in light of the obvious confusion on the part of Colonel McNeal as to when he gave the order which he charges appellant with disobeying, as reflected by the inconsistent dates entered on his DR-1 and as to where the order was given as evidenced by the testimony of all three officials; and in light of the fact that appellant had been relieved *624 of duty prior to the time that it appears that the Colonel gave the order, the Referee concludes that, if appellant heard the Colonel `s statement, he did not perceive the statement as a direct order. Additionally, the record contains no evidence which establishes that the public service was impaired by appellant's failure to turn in the key to the BOQ on January 4, 1988. Accordingly, the Referee concludes that the appointing authority has failed to bear its burden of proof as to the first charge alleged to support legal cause for this action.
The second incident is alleged to be appellant's refusal on January 6, 1988 to sign the release form as ordered by Deputy Warden Ward. In Department of Corrections v. Cage, 418 So.2d 3 (La.App. 1st Cir.1982), the Court held that failure to obey a direct order which is neither illegal, immoral, unethical nor in dereliction of duty constitutes insubordination. The Court, further, suggested that where the employee has reasonable alternatives available, he must follow the order and thereafter seek remedy through agency or Commission procedures. In the instant appeal, the issue is whether the order given was illegal, immoral, unethical or in dereliction of duty and whether appellant had reasonable alternatives available, rather than refusal to obey. The evidence indicates that Warden Ward became suspicious on the evening of December 30, 1987, that appellant had no valid excuse for his absence from December 18, 1987 through December 27, 1987, based upon what he perceived to be conflicting statements made by appellant at 4:00 p.m. and at 6:00 p.m. on that date and that when appellant produced the slip from Dr. Hall on January 6, 1988, Warden Ward understood the slip to contradict or conflict with appellant's prior statements. Under these circumstances, Warden Ward was entitled to and was authorized by Civil Service Rule 11.14 to require further information regarding appellant's incapacity between December 18 and December 27, 1987, before approving appellant's use of sick leave for that period. Apparently, Warden Ward attempted to convey this limited intent to appellant prior to ordering him to sign the letter authorizing Dr. Hall to release appellant's medical records; however, both Colonel McNeal and appellant recalled that Warden Ward stated that he wanted information about appellant's "medical history." After reading the letter, appellant refused to sign the letter, citing a privileged relationship between a doctor and a patient. It is clear that a direct order was given on January 6, 1988, and that appellant refused to obey that order.
The order to sign the release was given in an attempt to gain information regarding a limited time frame necessary to the appointing authority for an official, authorized job-related purpose; therefore, the intention of the order was lawful. However, as conveyed to appellant, the order encompassed appellant's entire medical history and the letter which he was ordered to sign authorizes a much broader disclosure than is justified in an attempt to verify appellant's specific absences from duty. The phrasing of the letter does not designate a specific person to whom medical information is to be disclosed and does not limit the authority to disclose to only such information as is genuinely relevant to the appointing authority's need to know.
Considering the language of the letter which appellant was ordered to sign on January 6, 1988, appellant was justified in refusing the order in that he was confronted with the option of waiving his right to privacy (La. Const. Art. I Sec. 5) or subjecting himself to disciplinary action. Appellant had no reasonable alternatives to refusing to obey the order given. Had he signed the letter, long before he could hope to attain an administrative remedy irreparable damage to his privacy might have occurred and he could have been subjected to embarrassment and humiliation based upon the dissemination of information for *625 which his employer had no need and to which his employer had no lawful right. See e.g. Williams v. Sistrunk, 417 So.2d 14 (La.App. 4th Cir.1982); Acosta v. Cary, 365 So.2d 4 (La.App. 4th Cir.1978); Trahan v. Larivee, 365 So.2d 294 (La.App. 3rd Cir. 1978); Sutton v. Lafont, 376 So.2d 628 (La.App. 4th Cir.1979). For the foregoing reasons, the Referee concludes that the appointing authority has failed to bear its burden of proof as to the second charge alleged to support legal cause for termination.
Accordingly, this appeal is granted. Appellant is to be reinstated to his position effective January 20, 1988, and the January 15, 1988 notice of termination is to be removed from his personnel records. Inasmuch as appellant is not without fault in this matter, in that he failed to follow procedure by providing a medical excuse upon return to duty on December 30, 1987, and after having been put on notice on January 6, 1988, that his employer wanted more complete medical information regarding his most recent absence, he did nothing to attempt to obtain the required information and to submit it to his employer; therefore, the Referee concludes that appellant is to be reinstated without back pay. See Beverly v. Sewerage and Water Board, 519 So.2d 172 (La.App. 4th Cir. 1987). Considering the contradictions contained in Colonel McNeal's DR-1, the overly broad scope of the medical release letter and the failure to consider appellant's responses to the DR-ls, the Referee finds that the action of the appointing authority in terminating this appellant was unreasonable; therefore, pursuant to Civil Service Rule 13.35, appellee is ordered to pay, jointly to appellant and his counsel, $500.00 as attorney's fees.
 /s/ Bernice R. Pellegrin
 Bernice R. Pellegrin
 Civil Service Commission Referee
NOTES
[1] The jurisprudence referred to is not cited in the opinion, so we have no way of knowing just how the appellants in Beverly were "distinguishable" from the referred to jurisprudence.
[1] Inasmuch as the evidence presented by the appointing authority clearly establishes that the facts alleged in the notice of termination are erroneous as to the date of this order, this charge could be considered as fatally defective and dismissed. See Department of Public Safety v. Rigsby [Rigby], 401 So.2d 1017, 1021 (La.App. 1st Cir.1981).