593 So.2d 680 (1991)
DEPARTMENT OF HEALTH AND HOSPITALS, HUEY P. LONG REGIONAL MEDICAL CENTER
v.
Lelia M. JEFFRESS.
No. 90 CA 2189.
Court of Appeal of Louisiana, First Circuit.
December 27, 1991.
*681 Gerard N. Torry, Staff Atty., Dept. of Social Services, Bureau of Legal Services, Baton Rouge, for appellant.
Samuel H. Craven, Alexandria, for appellee.
Robert R. Boland, Jr., Civ. Service General Counsel, Dept. of State Civ. Service, Baton Rouge, for Herbert L. Sumrall, Director, Dept. of State Civ. Service.
Before WATKINS, CARTER and FOIL, JJ.
WATKINS, Judge.
This is an appeal by the Department of Health and Hospitals, Huey P. Long Regional Medical Center in Pineville, Louisiana, (Hospital), from a decision of the State Civil Service Commission (Commission) which reversed a disciplinary action against Lelia M. Jeffress, a civil service registered nurse. We affirm.
Nurse Jeffress received a 30-day suspension after an incident involving an HIV-positive (AIDS) patient in the labor and delivery unit at the Hospital. Nurse Jeffress filed an appeal with the Commission on May 17, 1988. A public hearing was conducted in Pineville, Louisiana, on February 22, 1990. The Referee filed a decision on April 12, 1990, in which the Referee determined that the appointing authority (Hospital) failed to establish legal cause for the disciplinary action against Nurse Jeffress.
On April 27, 1990, the Hospital filed an application for review with the Commission, citing numerous factual errors in the Referee's decision. On August 21, 1990, the Commission denied the Hospital's application for review. The Hospital perfected this appeal.
On appeal the Hospital reiterates the alleged factual errors allegedly committed by the Referee and contained in the Referee's report. Additionally, the Hospital urges a technical error: that the Commission acted contrary to law because the Commission's "Notice of Denial" does not indicate that the Commission conducted an independent review of the sound recording of the hearing before the Referee.
Considering appellant's complaint of the technical deficiency in the Commission's denial, we note that the Notice of Denial is a standard form duly executed by the director of the Department of State Civil Service. Although the Notice of Denial does not state in so many words that the Commission conducted an independent review of the sound recording, it does refer to the applicable constitutional, statutory, and regulatory provisions which delineate the Commission's responsibilities in reviewing the decision of a referee following a public hearing.[1] We must accord the duly executed Notice of Denial a presumption of regularity and conclude that the Commission carried out its responsibilities pursuant to law. For this reason we conclude *682 that this assignment of error is without merit.
Even without the Notice of Denial, we would not remand this case, as the record before us is complete. Having reviewed the record, we conclude that the carefully articulated report of the Referee is free of error. We decline to disturb the Referee's findings of fact because we would have reached the same conclusions had we been the fact finders. Accordingly, we affirm the decision of the Commission, and we attach and adopt as our own the Report of the Referee.
The appellant is cast for costs of this appeal in the amount of $1,012.00.
AFFIRMED.

REPORT OF THE REFEREE

DECISION

DATED: April 12, 1990

FILED: April 12, 1990

IN RE: Appeal of Lelia M. Jeffress (DHH, Huey P. Long Regional Medical Center)

STATE OF LOUISIANA

CIVIL SERVICE COMMISSION

DOCKET NO. 7203

STATEMENT OF THE APPEAL
Appellant was employed by the Department of Health and Hospitals, at Huey P. Long Regional Medical Center, as a Registered Nurse 2 and was serving with permanent status.
By letter dated April 20, 1988, over the signature of James E. Morgan, Hospital Director, appellant was advised that the verbal suspension imposed at 6:42 p.m., April 7, 1988, was confirmed and would continue for thirty calendar days, ending at 6:42 p.m., May 7, 1988. As cause for this action, appellant is charged with failing to provide required post-delivery nursing care to a patient in isolation and in unstable condition on April 6, 1988.
On May 17, 1988, counsel on behalf of appellant filed a request for appeal wherein appellant complains of the suspension, denies the charges against her and alleges that the original action was not in accordance with Part 14 of the Louisiana State Personnel Manual. As relief, appellant seeks reversal of the action with back pay, all benefits and legal expenses and expungement of her record.
A public hearing was held in Pineville on February 22, 1990, before a Referee appointed by the Commission. Based on the evidence presented at the hearing and pursuant to Article X, Section 12(A) of the Louisiana Constitution, the Referee makes the following findings.

FINDINGS OF FACT
1. Appellant had been employed at the hospital since July, 1985, as a Registered Nurse. She was first assigned to work the Post-Partum floor for approximately six months, then the Medical/Surgical floor for approximately six months and then the Emergency Room for approximately two years.
2. Appellant was assigned to work the Labor/Delivery Unit on March 21, 1988, on an orientation basis under the supervision of Brenda Brown, R.N., the Labor/Delivery Head Nurse. Orientation consists of on-the-job training; Ms. Brown has a check list by which she trains and observes a new nurse on the unit. The procedures on the check list must be completed before Ms. Brown permits a nurse to take charge of a shift.
3. On April 6, 1988, appellant, who was still in orientation and who, therefore, was not to be counted for staffing purposes, worked the 7:00 a.m. to 3:00 p.m. shift with Ms. Brown and Debra Shields, L.P.N., who had been assigned to the Labor/Delivery Unit for approximately 3½ years.
4. At report, given by the off-going shift between 6:45 a.m. and 7:00 a.m., there were 5 patients in the Labor/Delivery Unit. Patient Nos. 219606 and 210668 were pre-eclampic and had been in the unit for over 24 hours to stabilize the condition. Patient Nos. 219026 and 220102 were in active labor. Patient No. 220101 was in the makeshift *683 Isolation Labor and Delivery Room because she had tested as positive HIV (the AIDS virus) and Western blot.
5. Patient No. 219026 delivered at 7:55 a.m. in the Delivery Room, attended by Dr. Wilborne, a medical student and one or more of the nurses. Appellant testified, without contradiction, that she was in the Delivery Room when this patient delivered and that she remained in the Delivery Room, with Dr. Wilborne, waiting for the patient's placenta to be expelled, when the patient became critical due to an inverted uterus and surgery was called.
6. Patient No. 220101 delivered at 8:20 a.m. in the Isolation Room, attended by Dr. Shuck, Ms. Brown and Ms. Shields. The delivery was difficult because the baby was very large.
At delivery, Ms. Brown took the baby under her care and Ms. Shields remained at the mother's bedside to await expulsion of the placenta and the repair of the episiotomy.
7. After obtaining a patient identification number for the baby of Patient No. 220101, preparing identification bracelets and certificates for the baby and completing necessary procedures for a newborn, Ms. Brown took the baby to the nursery. When Ms. Brown left the Isolation Room, at approximately 8:30 a.m., Dr. Shuck and Ms. Shields were with the mother.
8. Ms. Brown did not see appellant either in the Isolation Room immediately prior to or during the birth; while she was at the Nurses Station obtaining an identification number and materials; when she returned to the Isolation Room; or when she left the unit to take the baby to the Nursery.
9. Ms. Shields remained in the Isolation Room until it was necessary to go to the Delivery Room to get some additional sutures to repair Patient No. 220101's episiotomy. When she entered the Delivery Room, she learned of the crisis involving Patient No. 219026; she did not see appellant in the Delivery Room at that time. Ms. Shields took the sutures to Dr. Shuck in the Isolation Room and returned to the Delivery Room to assist with preparing Patient No. 219026 for surgery.
10. Appellant had the keys to the narcotics cabinet and, therefore, must have gone to get the medication ordered by Dr. Wilborne for and administered to Patient No. 219026, between 8:30 a.m. and 8:40 a.m.
11. At approximately 8:40 a.m., Ms. Brown returned to the unit from the nursery; as she entered the unit, she met the surgery crew wheeling Patient No. 219026 out of the unit on the way to the Operating Room. Appellant and Ms. Shields were near the gurney on which Patient No. 219026 was being moved.
12. Ms. Brown went to the Isolation Room where she discovered Patient No. 220101 alone in the room, uncovered, in the same bedding on which she had given birth; neither the patient nor the room had been cleaned up. Ms. Brown looked back to the area where appellant and Ms. Shields were and asked why the patient had not been cleaned up, checked and given care.
13. Appellant testified, without contradiction, that she first learned that Patient No. 220101 had delivered her baby when Ms. Brown asked why the patient had not been cleaned up and cared for.
14. Ms. Brown and Ms. Shields went into the Isolation Room and began caring for the patient. Appellant began putting on a gown and double gloving to go into the room and help.
15. While preparing to assist with the patient, appellant commented that she really did not want to care for the HIV patient because she was afraid for her unborn child. Appellant was approximately four months pregnant at the time.
16. Ms. Brown responded that it is not the known (infectious) patients but the unknown ones that are dangerous, but told appellant not to come into the room because there was not room for all three nurses in the room.
17. Ms. Brown found the patient to be in stable condition.
18. Later in the day, Ms. Brown began to wonder whether the hospital had a policy *684 regarding pregnant nurses dealing with AIDS patients; therefore, she went to the Assistant Director of Nursing and asked. Ms. Brown did not report appellant for any violation of policy or refusal to give care to a patient.
19. On the evening of April 7, 1988, appellant and Ms. Brown were summoned to the office of the Director of Nursing, Barbara Berry. Ms. Berry told appellant she was being suspended for negligence to a patient; neither appellant nor Ms. Brown were allowed to give any response to the charge at that time.

CONCLUSIONS OF LAW
In the appeal of a disciplinary action, the burden of proof as to the facts is on the appointing authority. La.Const. Art. X, Sec. 8(A); Shelfo v. LHHRA, Pinecrest State School, 361 So.2d 1268 (La.App. 1st Cir.1978); Stiles v. Department of Public Safety, 361 So.2d 267 (La.App. 1st Cir. 1978); Department of Public Safety v. Rigby, 401 So.2d 1017 (La.App. 1st Cir. 1981), writ denied, 406 So.2d 626 (La.1981); Dent v. Department of Corrections, 413 So.2d 920 (La.App. 1st Cir.1982). The burden of proof is by a preponderance of evidence, which means evidence of greater weight or more convincing than that offered in opposition thereto. Savoie v. Department of Corrections, 394 So.2d 1285 (La.App. 1st Cir.1981); Herbert v. Department of Police, 362 So.2d 1190 (La.App. 4th Cir.1978); Jones v. Department of Health and Human Resources, 430 So.2d 1203 (La.App. 1st Cir.1983); Thornton v. Department of Health and Human Resources, 394 So.2d 1269 (La.App. 1st Cir. 1981). The appointing authority must establish by a preponderance of evidence that legal cause exists for the disciplinary action imposed. See La.Const. Art. X, Sec. 8(A); Leggett v. Northwestern State College, 242 La. 927, 140 So.2d 5 (1962); Jones v. Department of Health and Human Resources, supra; Williams v. Housing Authority of New Orleans, 425 So.2d 1310 (La.App. 1st Cir.1983); Dent v. Department of Corrections, supra. The Referee concludes that in this appeal the appointing authority has failed to bear its burden of proof.
The evidence presented at the hearing establishes that the period of time involved in this incident was approximately 20 minutes, from 8:23 a.m. when Patient No. 220101's baby was born until 8:40 a.m. when Ms. Brown discovered that the patient had been left alone without basic care in the Isolation Room. During this time period, there is no evidence to establish that appellant was made aware that Patient No. 220101 was either in need of post-delivery care or that she was aware of the patient's needs and neglected or refused to provide the necessary nursing care. Appellant testified that she was involved in the care of Patient No. 219026, who was in critical condition, and that she checked on the three patients in the Labor Room during that period of time. Additionally, the patient was only left alone for, at most 10 minutes, after Ms. Brown left the room to take the baby to the nursery, then Ms. Shields went to assist in the Delivery Room and finally, Dr. Shuck left the Isolation Room and, contrary to the assertion in the notice of suspension, upon her return, Ms. Brown found the patient in stable condition.
Appellant, herein, does not deny that she had and voiced concerns regarding danger to her unborn child which might be incurred by her contacts with an AIDS patient under the circumstances present in a delivery room; however, there is no evidence to support the appointing authority's contention that because of such fears, appellant failed or refused to give nursing care to the patient in question on April 6, 1988. The evidence presented by the appointing authority fails to establish legal cause for disciplinary action against this appellant.
Accordingly, this appeal is granted and the suspension in hereby reversed. Appellant is to receive back pay for the period of suspension, subject to an offset in favor of appellee for all wages earned and/or unemployment compensation received during that period. The Referee finds that the appointing authority was unreasonable in *685 imposing discipline against this appellant under the circumstances present at the time of this incident; therefore, pursuant to Civil Service Rule 13.35, appellee is ordered to pay, jointly to appellant and her counsel, attorney's fees in the amount of $500.00.
 s/ Bernice R. Pellegrin
 Bernice R. Pellegrin
 Civil Service Commission
 Referee
NOTES
[1] The Commission's Notice of Denial states: After having reviewed the application(s) for review filed by the appellee and the documents enumerated in Civil Service Rule 13.36(b)(5), the State Civil Service Commission hereby denies the application(s). Therefore, pursuant to Civil Service Rule 13.36(f)(1), and Article X, Section 12(A) of the Louisiana Constitution of 1974, as amended by La.Acts 1982, No. 883, adopted as a constitutional amendment effective October 15, 1982, the decision of the Referee herein becomes the final decision of the Commission on the date that this order is filed with the Director.